**BASTIAN MATERIAL HANDLING, L.L.C., Appellant,**

v.

**STELLUTI KERR, L.L.C., Appellee.**

No. 11–06–00128–CV.

Court of Appeals of Texas, Eastland.

May 10, 2007.

Jody D. Jenkins, McCleskey, Harriger, Brazill & Graf, L.L.P., Lubbock, for appellant.

Zollie C. Steakley, Steakley, Wetsel & Carmichael, L.L.P., Sweetwater, for appellee.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

This is an interlocutory appeal[1] from the trial court's order denying the special appearance of Bastian Material Handling, L.L.C. (BMH), an Indiana-based company. Plaintiff Stelluti Kerr, L.L.C. (SK), a Texas resident, sued BMH in Texas asserting causes of action based upon a sworn account and quantum meruit. BMH filed a special appearance pursuant to Tex.R. Civ. P. 120a in which it asserted that the trial court lacked in personam jurisdiction over BMH. After conducting a hearing, the trial court denied BMH's special appearance. We reverse and render.

*Issues*

BMH presents two issues for review. In the first issue, BMH contends that the order denying the special appearance is erroneous because, as a matter of law, the trial court had no personal jurisdiction over BMH. In its second issue, BMH argues that the evidence was legally and factually insufficient to support the trial court's order. Under both of these issues, BMH asserts (1) that it did not purposefully do some act or consummate some transaction in Texas, (2) that the causes of action do not arise from and are not connected with any acts or transactions of BMH in Texas, and (3) that the trial court's assumption of jurisdiction over BMH offends traditional notions of fair play and substantial justice.

*Burden of Proof and Standard of Review*

■ The burdens of proof, standards of review, and jurisdictional laws applicable to the filing of a special appearance by a nonresident defendant are now well settled. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793–96 (Tex. 2002). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Id.* at 793; *see* Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997). A defendant challenging a Texas court's personal jurisdiction over it must then negate the bases for jurisdiction. *BMC*, 83 S.W.3d at 793.

■ Whether a court has personal jurisdiction over a defendant is a question of law. *Id.* at 794. When fact issues are present, we may review the trial court's findings of fact for legal and factual sufficiency, but we review de novo the trial court's conclusions of law as a legal ques-

---

§ 51.014(a)(7) (Vernon Supp.2006).

tion. *Id.* When the trial court does not issue findings of fact and conclusions of law with respect to its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* at 795; *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987). These implied findings are not conclusive and may be challenged for legal and factual sufficiency on appeal when the clerk's record and the reporter's record are filed in the appellate court. *BMC*, 83 S.W.3d at 795. Although no findings were requested of or provided by the trial court in this case, the appellate record in this case contains both the clerk's record and the reporter's record, and the material facts are not in dispute.

### Jurisdiction Over Nonresidents

■ The Due Process Clause of the United States Constitution and the Texas long-arm statute govern the exercise of jurisdiction by Texas courts over nonresident defendants. U.S. CONST. amend. XIV; TEX. CIV. PRAC. & REM.CODE ANN. ch. 17 (Vernon 1997 & Supp.2006). Section 17.042 of the long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that "does business in this state," including a nonresident who "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." Section 17.042(1). Section 17.042 extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC*, 83 S.W.3d at 795 (quoting *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977)). Consequently, we consider only whether it is consistent with federal constitutional requirements of due process for Texas courts to assert in personam jurisdiction. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991).

■ The United States Supreme Court has divided the due process requirements into two parts: (1) whether the nonresident defendant has "purposefully established minimum contacts" with the forum state and, if so, (2) whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Guardian Royal*, 815 S.W.2d at 226. A nonresident defendant that has "purposefully" availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *Burger King*, 471 U.S. at 474–76, 105 S.Ct. 2174; *BMC*, 83 S.W.3d at 795. However, a nonresident defendant should not be subject to a foreign court's jurisdiction based upon random, fortuitous, or attenuated contacts with the forum. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174; *BMC*, 83 S.W.3d at 795.

■ A nonresident defendant's minimum contacts may give rise to either specific jurisdiction or general jurisdiction. *Helicopteros*, 466 U.S. at 413–14, 104 S.Ct. 1868; *BMC*, 83 S.W.3d at 796. Specific jurisdiction is established when the cause of action arises out of or relates to the nonresident defendant's contact with the forum. *Guardian Royal*, 815 S.W.2d at 227. However, the contact must have resulted from the nonresident defendant's purposeful conduct and not the unilateral activity of the plaintiff or others. *Id.; see Helicopteros*, 466 U.S. at 417, 104 S.Ct. 1868. Merely contracting with an out-of-state party does not necessarily establish sufficient minimum contacts in the forum. *Burger King*, 471 U.S. at 478, 105 S.Ct.

2174. General jurisdiction is established when a nonresident defendant conducts substantial activities in the forum state such that his contacts with the forum state are continuous and systematic, in which case the forum may exercise personal jurisdiction over the nonresident defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Guardian Royal,* 815 S.W.2d at 228.

### Jurisdictional Facts

This case involves the assertion of specific jurisdiction, and the facts relating to jurisdiction are largely undisputed. The record shows that the relationship between SK and BMH began in 2001 when Anthony Stelluti of SK solicited a bid from BMH regarding a project in Kentucky. SK is a Texas limited liability company that is "in the business of assessing and meeting the needs of customers in need of automated packaging lines." SK determines the type of equipment that its customers need and contacts the manufacturers of such equipment. SK is compensated for its services by commissions received from the equipment manufacturers. BMH is an Indiana-based limited liability company that is in the business of designing, selling, and installing material-handling systems. BMH maintains offices in Indiana, Ohio, Michigan, Kentucky, Missouri, California, and Florida. BMH has no office or registered agent in Texas.

Stelluti phoned BMH regional manager Mitch Smith in Kentucky and asked Smith if BMH would be interested in bidding on a job for one of SK's customers. Smith agreed to provide a quote for a conveyor system and entered into a contract with SK on behalf of BMH. The contract provided that BMH would pay SK a commission of 15% on all parts, equipment, and services sold by BMH to SK's then-undisclosed customer. After the contract was signed, Stelluti sent an initial concept layout drawing for the project with SK's customer, Continental Mills. BMH prepared a quote and sent the proposal to SK and Continental Mills. After its proposal was accepted by SK and Continental Mills, BMH contacted Stelluti by e-mail and fax with a few follow-up questions regarding the project specs. Stelluti visited the project in Kentucky once, but all of his work was performed at SK's offices in Texas.

BMH employee Jon Tilmon worked with representatives of Continental Mills and developed the final design. After Tilmon completed the final design, BMH then installed the conveyor system for Continental Mills. All of the work performed by BMH on the Continental Mills project was done in Kentucky, and all of the business related to the project took place in Kentucky or Indiana. BMH communicated with SK by e-mail or fax and, as a professional courtesy, sent Stelluti copies of documents addressed to Continental Mills regarding engineering, design, and materials for the project. Nobody from BMH came to Texas to perform any work with SK or any work on the Continental Mills project.

### Analysis

SK argues that our focus should be on the contract between it and BMH rather than on the contract with Continental Mills. SK argues that virtually all of its activities on the initial contract occurred in Texas; that BMH took advantage of the efforts of a Texas resident when it contracted with Continental Mills; and that, during the Continental Mills project, BMH requested SK's aide and assistance knowing that SK's work would be performed in Texas. Even if we focus entirely on the initial contract, the record does not support the trial court's determination that BMH had minimum contacts with Texas such that it purposefully

availed itself of the privileges and benefits of conducting business in Texas.

SK's position relies almost entirely on its own actions. However, when determining if BMH had sufficient minimum contacts with the state, we consider only BMH's conduct. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex.2005); *see also World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (unilateral activity cannot satisfy the requirement of contact with the forum state). The proper inquiry is what is the relationship between BMH, the forum, and the litigation. *See Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc.,* 80 S.W.3d 723, 727 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (contract negotiations with a Texas resident and contract payments sent to Texas are insufficient to establish jurisdiction when the entire substance of the contract is performed outside the state).

 The initial contract itself is insufficient to create jurisdiction. Courts are required to employ a "highly realistic" approach that recognizes that a " 'contract' ... is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' " *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174. Moreover, the mere fact that it communicated with SK in Texas and benefitted from work SK performed in Texas is insufficient to establish personal jurisdiction. *See 3–D Elec. Co. v. Barnett Constr. Co.,* 706 S.W.2d 135, 143–44 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (nonresident's phone calls and faxes to Texas to solicit and facilitate a contract with plaintiff, and plaintiff's preliminary design work done in Texas did not establish personal jurisdiction).

BMH did nothing to purposefully avail itself of the privileges and benefits of conducting business in Texas. When SK's unilateral actions are eliminated, BMH's contacts with the state were isolated and minimal. Even these were almost entirely fortuitous because they were communications with a specific individual. SK has offices in Snyder, Texas, and in Montreal, Canada. SK directs our attention to three specific e-mails from BMH. Those e-mails could have been accessed by SK as easily in Canada as in Texas. SK argues that BMH's e-mails required further action by it in Texas, but in each case, BMH asked for additional information that ultimately would have come from Continental Mills. From BMH's perspective, SK's efforts to acquire this additional information and to forward it to BMH likewise could have occurred in either office.

### Holding

The exercise of jurisdiction over BMH was improper as a matter of law. BMH's first issue and its second issue insofar as it relates to legal sufficiency are sustained. We need not address the factual sufficiency challenge. Tex.R.App. P. 47.1. We reverse the trial court's order and render judgment dismissing the claims against BMH for want of jurisdiction.