**EXCHEQUER FINANCIAL GROUP, INC., Appellant**

**v.**

**STRATUM DEVELOPMENT, INC., Appellee.**

No. 05–06–01622–CV.

Court of Appeals of Texas, Dallas.

Nov. 29, 2007.

Gary E. Smith, Graham, Bright & Smith, P.C., Dallas, TX, for Appellant.

David R. Weiner, Glast, Phillips & Murray, P.C., Kelly D. Hollingsworth, Dallas, for Appellee.

Before Justices RICHTER, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice FRANCIS.

Exchequer Financial Group, Inc. appeals the trial court's order granting Stratum Development, Inc.'s special appearance and dismissing appellant's claims against appellee. In four issues, appellant contends the trial court erred in issuing the order because appellee waived its "defective" special appearance, appellee had sufficient minimum contacts to support general and specific jurisdiction, and the trial court should have granted a continuance. We affirm.

■■■ Whether a court has personal jurisdiction over a nonresident defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805–06 (Tex.2002). In reviewing a trial court's ruling on a special appearance, we examine all the evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *Reiff v. Roy,* 115 S.W.3d 700, 705 (Tex.App.-Dallas 2003, pet. denied). When, as in this case, the trial court does not file findings of fact and conclusions of law, all facts necessary to support the order and supported by the evidence are implied. *Id.* We reverse the trial court's ruling only when the court's implied findings and resulting order are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong. *Id.*

■■■ Texas courts may exercise personal jurisdiction over a nonresident defendant only if (1) the defendant has established minimum contacts with Texas and (2) exercising jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002). In evaluating the extent of the defendant's contacts with Texas, the touchstone of our jurisdictional analysis is "purposeful availment." *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005). In determining whether the defendant has purposefully availed itself of the privilege of conducting activities within Texas, we look only to the defendant's contacts and not unilateral contacts of third parties. *See id.* at 784–85. We examine only purposeful contacts of the defendant itself that are not random, isolated, or fortuitous. *Id.* at 785. We search for evidence showing the defendant availed itself of the forum by seeking some benefit, advantage, or profit. *Id.*

The evidence before the trial court, developed through affidavits, documents, and testimony, shows that appellant is a Delaware corporation with its principal place of business in Dallas, Texas. Appellee is an Illinois corporation with its principal place of business in Naperville, Illinois. Appellant alleged appellee and others, while contracted to provide it with technical services, misappropriated its concept for a network of computerized kiosks, to be known as "The Rabbit System," where customers could order nostalgic food items. On June 1, 2004, appellant sued the defendants in Dallas County, Texas under a variety of contract and tort claims.

On July 8, 2004, appellee filed a special appearance and original answer. In denying that the trial court had general or specific jurisdiction over it, appellee de-

clared it does not reside, maintain a place of business, or engage in business in a continuous and systematic manner in Texas. Appellee stated it does not maintain a registered agent in the State, has not committed any tort in Texas, and denied entering into any oral or written agreements with appellant in Texas. Appellee contended that the trial court's assertion of jurisdiction over it would offend traditional notions of fair play and substantial justice and would deprive it of federal due process.

Appellant filed a response to the special appearance and attached affidavits from Tom Souran and counsel. Souran, appellant's president, averred he negotiated from Dallas, Texas contracts—by fax, telephone, and email—with appellee and defendant Insight 360 Degrees, Inc. Souran asserted the contracts were "performable" in Dallas County because they contemplated appellant would pay from Dallas and transmit system inputs, trade secrets, and proprietary information from Dallas. Souran further asserted that the end product of the agreements was put into the stream of commerce with the reasonable expectation it would enter Texas.

Attached to counsel's affidavit was the deposition of Tracy Rowley, Insight's former president, who had negotiated the contracts with appellant. Rowley testified that he did not know if Insight had done business in Texas because he could never tell where Souran was located while they were in contact. Rowley described Souran as "hopping around from state to state."

On October 13, 2006, the trial court held a hearing on appellee's special appearance. During the hearing, Souran testified that appellant signed a "Stratum Internet Service Agreement" with appellee, designating it as the sole distributor of appellee's software in the United States, and an "Insight 360 Licensing Agreement" with appellee licensing it to use the StratumWeb CMS website and kiosk software appellee had developed.

Souran admitted that appellant never made any payments under the agreements because there were no sales. Souran further admitted that he signed the internet service agreement on behalf of "The Rabbit System," rather than appellant. Souran admitted that telephone calls and facsimiles from appellee to him were placed to a number with a "608" area code covering Madison, Wisconsin, and then transferred, by remote call forwarding, to his local, Dallas-area number. Appellant's telephone records, attached to Souran's affidavit, reflect one telephone call placed from appellant to appellee's president in Illinois, but Souran testified the records were not complete and he was sure there were other calls.

Souran pointed to a section of the licensing agreement designating Insight as appellee's "Partner." Souran admitted that he has no knowledge of any common ownership or profit sharing between appellee and Insight. Souran testified that although appellee and Insight had separate offices at the time the agreements were signed, he believed Insight had moved afterwards into appellee's office.

Souran admitted that he was assuming that appellee and Insight placed a product into the stream of commerce with the reasonable expectation that it would enter Texas, and that he was not aware of any actual product entering Texas. Souran was aware that Dallas-based Famous American Foods (FAF) had announced on its website that it had "rolled out kiosk solutions" using Insight's software, but Souran admitted appellee was not mentioned in FAF's announcement. Souran explained, however, that "[t]here's never been a reference to [appellee] other than if you're a developer and wanting to run

kiosks, that's where they come into play for the fulfillment process and the back end .... they would never be in the front end out to the public."

Scott Swoboda, appellee's president, testified appellee never received any payments from appellant and never did any development work for appellant. Swoboda testified he was unaware initially that Souran was in Texas. Swoboda believed appellant was in Wisconsin. He called Souran at a telephone number in Wisconsin. He did not understand he was dealing with someone in Texas until he saw the internet service agreement reflecting a Dallas address.

Swoboda explained that appellee sells website services that are performed in Illinois. A customer can view the results of the services on a computer in Texas, but the actual product of appellee's services remains on its servers in Illinois. Swoboda testified appellee is available over the internet to anyone who wishes to do business, but he denied it solicits business specifically in Texas. Swoboda admitted a person in Texas could access its website, StratumDevelopment.com, on a personal computer in Texas and order services. Swoboda testified that over a period of a few months to a couple of years, appellee had obtained four or five Texas churches as customers for its website contract management system. For the Texas church customers, appellee hosts websites on servers in Illinois. Swoboda testified that his only Texas contacts were some family friends who lived in the State. He indicated that he had never traveled to Texas on business but had been to the State a couple of times in the mid-1990s for a flight layover and a convention in Austin while working for another employer.

Swoboda denied that FAF was using appellee's software. Rather, Swoboda indicated that Insight had developed the FAF website independently. According to Swoboda, appellee had gotten out of the kiosk business in late 2003. During the July—August 2003 period when the agreements with appellant were signed, a pizza parlor chain in Chicago was operating kiosks using appellee's software, but the kiosks were shut down around that time period. Swoboda testified that the kiosks did not have appellee's software inside; rather, the kiosks used the internet to direct the customer to appellee's servers in Chicago.

Although the licensing agreement describes Insight as appellee's "partner," Swoboda explained there is no legal partnership between the entities. Swoboda characterized Insight as one of a number of design firms that obtain appellee's website development products and services at a discount and then resell them to customers. Swoboda testified that appellee and Insight do not share profits, employees, managers, directors, offices, or telephone numbers.

In its first issue, appellant contends appellee waived its special appearance by making "general appearances" when it (1) signed an agreed order abating the case, (2) moved to dismiss the case after appellant failed to obtain a certificate of authority to do business in Texas, and (3) announced that it was ready to try the case. We conclude appellant never appeared generally and did not waive its special appearance.

Before discussing the merits of appellant's contentions, we first address deficiencies in the record on appeal. Neither the abatement order nor the motion to dismiss were filed with the record as individual documents. Rather, they appear in the record only as attachments to counsel's affidavit filed in support of appellant's response to the special appearance. It is not clearly established in the law that we may

consider the order and motion to dismiss as part of the record on appeal. There are, however, some authorities suggesting that, at least in the absence of a complaint by appellee, the documents are available for our consideration. *See, e.g., Beck v. Walker,* 154 S.W.3d 895, 899 n. 2 (Tex. App.-Dallas 2005, no pet.) (when order not included in record on appeal, court could only consider as part of the record those portions of order quoted in other documents that were properly included in record); *Mathis v. RKL Design/Build,* 189 S.W.3d 839, 842 n. 2 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (by failing to object and addressing appellant's points on the merits, appellee waived objection to summary judgment pleadings appearing in record only as exhibits to motion for new trial); *Atchison v. Weingarten Realty Mgmnt. Co.,* 916 S.W.2d 74, 77 (Tex.App.-Houston [1st Dist.] 1996, no writ) (where motion for summary judgment appears in record only as attachment to another motion and appellee objected, motion for summary judgment is not part of record on appeal). Because appellant cannot prevail on the merits, we will assume, without deciding, that the order and motion are before the court.

 Turning to the merits, we first consider whether appellee appeared generally by signing the order granting the plea in abatement. A defendant waives its special appearance and appears generally if it requests affirmative relief inconsistent with its assertion that the trial court lacks personal jurisdiction. *See Dawson–Austin v. Austin,* 968 S.W.2d 319, 323 (Tex.1998). In the present case, the actual plea in abatement does not appear in the record. The order granting the plea in abatement, however, reflects the plea was filed by defendants James E. Melady and Custom Meats Corporation, not by appellee. The order shows the abatement was granted to allow appellant an opportunity to obtain a certificate of authority to do business in Texas so it could pursue the litigation. Appellee's counsel signed the order "approved as to form only." There is no reporter's record on file with the court showing what, if anything, appellee did during the hearing.

Appellee did not file the motion requesting the plea in abatement, and it agreed only to an order regarding another party's request for affirmative relief. There is no evidence on our record showing appellee requested any affirmative relief from the trial court in connection with the plea in abatement. Thus, we conclude counsel's signature approving the form of the order granting a plea in abatement did not constitute a general appearance. *See id.*

Appellant next contends filing the motion to dismiss waived appellee's special appearance because the motion did not state it was made subject to the special appearance, the motion requested the affirmative relief of dismissal, and the motion proceeded to a hearing. We disagree.

A special appearance must be made prior to any plea, pleading, or motion. TEX.R. CIV. P. 120a(1). In this case, the record shows appellee filed its special appearance and original answer on July 8, 2004. The special appearance recites that it was "filed prior to any motion to transfer venue, plea, pleading, or other motion" filed by appellee and nothing in the record refutes that assertion.

The motion to dismiss reflects Insight and appellee filed it because appellant had failed to acquire the necessary certificate of authority. The motion states, and the trial court's docket sheet confirms, the trial court abated the case during an oral hearing held on November 19, 2004. The agreed order was signed on January 3, 2005. The copy of the motion to dismiss attached to counsel's affidavit does not

bear a file mark. It does, however, contain a certificate of service showing it was served on April 4, 2005. The motion requests the trial court to dismiss the case because appellant had not yet acquired the necessary certificate.

■■■■■ We conclude appellee's filing of the motion to dismiss did not waive its special appearance. It is not necessary that pleas, pleadings, or motions filed subsequent to the special appearance expressly state they are made subject to the special appearance. *See Dawson–Austin*, 968 S.W.2d at 322–23. Moreover, even if such a disclaimer was required, the special appearance expressly states that subsequent motions are made subject to it:

> Whether or not expressly stated, any subsequent pleadings filed by or on behalf [of appellee are] made expressly subject to this special appearance and without waiver of [appellee's] right to contest [appellant's] assertion of *in personam* jurisdiction over [appellee].

The mere filing of a motion, clearly subject to the special appearance, does not constitute a general appearance. *See id.* at 322 (concluding filing plea in abatement later within same document as special appearance did not constitute general appearance). The case was abated at the time the motion was filed. The motion, requesting dismissal on the ground appellant was not legally authorized to pursue its case, did not request affirmative relief that is inconsistent with appellee's assertion that the trial court lacked jurisdiction. *See id.* at 323. Although appellant states a hearing was held, no reporter's record of such a hearing has been filed, and the trial court's docket sheet reflects it conducted a telephone conference during which counsel agreed that the motions to dismiss were rendered moot when appellant obtained the missing certificate of authority.

Finally, appellant contends appellee waived its special appearance when during a hearing on appellant's motion for continuance, it announced it was ready to try the case. Appellee admits that, in the context of opposing a further continuance, it told the trial court it was ready to try the case, but it denies making a "readiness" announcement that would constitute a general appearance and waive its special appearance.

As authority for its position, appellant cites *Liberty Enterp., Inc. v. Moore Transp. Co., Inc.*, 690 S.W.2d 570 (Tex. 1985). In *Liberty*, the defendant filed a special appearance and motion to set aside a default judgment and grant a new trial. *Id.* at 571. The supreme court determined that the defendant waived its special appearance and appeared generally by (1) reciting in its motion for new trial that it was ready to try the case and (2) by agreeing to the trial court's order reinstating the case for trial. *Id.* at 571–72. We conclude *Liberty* is distinguishable.

Our record includes a reporter's record from the special appearance hearing, but it does not include a reporter's record from the earlier hearing where appellee allegedly announced "ready." While arguing the issue during the special appearance hearing, appellant's counsel described the earlier hearing as a "telephonic hearing." During the special appearance hearing, the parties could not agree on the context or import of the "ready" remark. In *Liberty*, the announcement of readiness was made in a written pleading filed with the court, thus affording the reviewing court a clear record. *See Liberty*, 690 S.W.2d at 571. In the present case, we conclude there is not a reliable enough record to overturn the trial court's implied finding that there was no waiver. Having rejected all of appellant's waiver contentions, we overrule its first issue.

In its second issue, appellant contends the trial court erred in granting appellee's "defective" special appearance because appellee did not negate that (1) it placed its products into the stream of commerce with the reasonable expectation that they would end up in Texas, (2) it placed telephone calls and sent facsimiles to Texas while negotiating contracts with appellant and it expected appellant to make payments from Texas, and (3) the jurisdictional contacts of Insight and Insight's employees should be attributed to it.

■ The "stream of commerce" doctrine provides a basis for personal jurisdiction in products liability suits when a manufacturer or distributor, seeking to serve the markets of other States, has "delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The doctrine permits suit within a particular forum when "allegedly defective merchandise has there been the source of injury to its owner or to others." *Id.* at 297–98, 100 S.Ct. 559. Appellant presents no authority showing the "stream of commerce" doctrine applies to the present case. Moreover, even if appellant could rely upon the "stream of commerce" doctrine, Swoboda denied that appellee placed any products into the stream of commerce while Souran admitted he had no knowledge of any actual products. *See Michiana,* 168 S.W.3d at 786 (stating "stream-of-commerce jurisdiction requires a stream, not a dribble").

■ Turning to the effect of the negotiations over the contracts and the expected payments, although Souran may have negotiated the contracts from Texas, the evidence shows Swoboda thought he was dealing with a Wisconsin customer. Souran admitted that his telephone calls were routed through Wisconsin before being forwarded to Texas. Sales agreements between appellant and Insight reflect an address in Madison, Wisconsin for appellant and for Souran's other companies. Appellant did not sign either the licensing agreement or the internet service agreement it relies upon to establish jurisdiction in Texas. The actual signatory to the contracts, "The Rabbit System," is listed as having a Madison, Wisconsin address in the Insight licensing agreement, but a Dallas address in the internet service agreement.

The supreme court has criticized basing personal jurisdiction on telephone calls because of the possibility that the calls could be forwarded to some third jurisdiction without the defendant's knowledge. *See id.* at 791. By forwarding Souran's calls to Texas from Wisconsin, sending the defendants numerous documents showing a Wisconsin address, and "hopping around," appellant masked its Texas location from appellee. Under the circumstances, we cannot conclude appellee purposefully availed itself of the Texas market in its dealings with appellant.

■ Although the licensing agreement identifies Insight as appellee's "partner," Swoboda testified appellee and Insight do not share common ownership, overlapping employees, or offices. Although Souran averred in his affidavit his belief that some relationship existed, he conceded during his testimony that he had no knowledge of any common ownership or profit sharing. We must presume the trial court resolved the factual dispute in appellee's favor. *See Am. Type Culture,* 83 S.W.3d at 806. We cannot conclude the trial court erred in not attributing Insight's jurisdictional contacts to appellee. *See Michiana,* 168 S.W.3d at 785 (stating that only the defendant's contacts with the forum should be considered in determining whether personal jurisdic-

tion exists). We overrule appellant's second issue.

In its third issue, appellant contends appellee had sufficient minimum contacts with Texas to support an exercise of specific jurisdiction. Specific jurisdiction exists if the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *BMC Software*, 83 S.W.3d at 796. There must be a substantial connection between appellee's contacts with Texas and the operative facts of the case. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex.2007).

To show the necessary connection, appellant again points to telephone calls appellee made into Texas while negotiating the contracts. Appellant also alleges the contracts were performable in Dallas, Texas because payments, product inputs, proprietary information, and trade secrets would come from Dallas, the contracts proposed putting the end product into the stream of commerce with the reasonable expectation that the product would enter Texas, and the end product was put into the stream of commerce by appellee with the reasonable expectation that it would enter Texas.

As we have already discussed in reviewing appellant's second issue, there is no evidence of a "stream of commerce" to consider in this case and the forwarded telephone calls do not establish personal jurisdiction. Moreover, appellant's "performable" contract contention emphasizes its own unilateral activity in Texas rather than focusing upon the jurisdictional contacts of appellee. *See 3–D Elec. Co. v. Barnett Constr. Co.*, 706 S.W.2d 135, 142–43 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (plaintiff's preliminary design work, information gathering, and sending materials from Texas did not establish personal jurisdiction over defendant when defendant's contacts with Texas were limited to telephone calls, correspondence, and payments into the State, and substance of contract was performed in foreign jurisdictions); *Bastian Material Handling, L.L.C. v. Stelluti Kerr, L.L.C.*, 229 S.W.3d 407, 411–12 (Tex.App.-Eastland 2007, no pet.) (no personal jurisdiction in Texas over defendant where defendant performed contract outside State and contacts with Texas limited to contracting and communicating with Texas-based plaintiff). The licensing agreement and the internet service agreement provide that Illinois law will govern disputes between the parties. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (court's jurisdictional analysis should not ignore contractual choice-of-law provisions). According to Swoboda, appellee did not even know the payments would come from Texas until he saw the internet services contract. Moreover, the mere fact that appellant intended to pay from Texas for the services appellee was performing in Illinois is insufficient to confer specific jurisdiction. *See IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 597–98 (Tex.2007) (per curiam) (contracting with Texas resident and accepting account initiation fee not sufficient to satisfy minimum contacts test where services to be performed in California). Concluding that there is no basis for specific jurisdiction, we overrule appellant's third issue.

In its fourth issue, appellant contends the trial court should have granted it a continuance before ruling on the special appearance because appellee's representative failed to appear for deposition. As a result, appellant contends it was deprived of the opportunity to show the existence of general jurisdiction over appellee. Alternatively, appellant contends that Swoboda's testimony established that appellee has a website accessible in Texas and does

business in Texas. Appellee responds that appellant waived its issue by failing to obtain a ruling on its request for a continuance and that appellee's contacts with Texas are insufficient to confer general jurisdiction.

The record reflects appellant requested a continuance as part of its written response to appellee's special appearance. Although there is no written order in the record reflecting the trial court's ruling, the parties agree that a hearing was held on the motion, and the trial court's docket sheet shows the motion for continuance was denied. Because there are other grounds for overruling appellant's fourth issue, we will assume, without deciding, that error was preserved.

Turning to appellant's complaints about discovery, the reporter's record from the special appearance hearing shows it had an opportunity to question Swoboda at length about appellee's general contacts with Texas. At the conclusion of Swoboda's testimony, appellant indicated it had no further questions for him. We conclude the trial court did not err in evaluating appellee's general jurisdictional contacts without first allowing appellant an opportunity to take appellee's deposition.

Furthermore, the record does not show the trial court erred in not finding general jurisdiction. General jurisdiction exists if the defendant's contacts with Texas are continuous and systematic. *BMC Software*, 83 S.W.3d at 796. To support its contention that the trial court has general jurisdiction, appellant contends Swoboda testified that appellee operates a website accessible in Texas, does business within the State, and has four, regular Texas customers. Nothing in Swoboda's testimony establishes that appellee has continuous and systematic contacts with Texas. Appellee's place of business is in Illinois. Nothing in the

evidence presented suggests appellee has made any particular effort to target or attract Texas customers. To the contrary, Swoboda's testimony establishes appellee lets customers come to it.

For purposes of establishing personal jurisdiction, websites fall into three categories: (1) fully interactive websites clearly used for transacting business over the internet, (2) interactive websites allowing the exchange of information between a potential customer and a host computer, and (3) passive websites used only for advertising over the internet. *Reiff*, 115 S.W.3d at 705–06. In cases involving interactive websites, the degree of interactivity determines whether there is personal jurisdiction. *Id.* at 706.

The record does not show what category of website StratumWeb.com falls under. The testimony at the special appearance hearing establishes appellee provides web development services and website hosting from its place of business in Illinois. Although potential customers can contact appellee through its website, the record does not reveal the extent of appellee's interaction with its customers through the website. We note that appellant negotiated its contracts with appellee by telephone, facsimile, and email rather than through interaction with appellee's website.

In evaluating the existence of general jurisdiction, we do not view each contact in isolation. Rather, we carefully investigate, compile, sort, and analyze the contacts for proof of a pattern of continuing and systematic activity. *Am. Type Culture*, 83 S.W.3d at 809. The evidence shows appellee serves only a small number of Texas customers, provides its services from Illinois, and has made no effort to seek out customers in Texas. We conclude the trial court did not err in concluding appellee's contacts with Texas do not rise

to the level of continuous and systematic contacts that would support general jurisdiction in Texas. *See id.* at 809–10 (concluding no general jurisdiction existed where defendant did not advertise in Texas, had no physical presence in Texas, performed all business services outside Texas, and carefully constructed its contracts to ensure it did not benefit from Texas law). We overrule appellant's fourth issue.

We affirm the trial court's order granting appellee's special appearance and dismissing appellant's suit against appellee.