# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-12-00291-CV

**Linda Hayes Schoendienst, Appellant**

**v.**

**Robert L. Haug, Vince Wood and Highland Ventures, I, Ltd., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-11-002537, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

### O P I N I O N

This is a restricted appeal from a "no-answer" default judgment that appellees Robert L. Haug, Vince Wood, and Highland Ventures, I, Ltd. obtained against appellant Linda Hayes Schoendienst (Hayes).[1] Hayes brings three issues urging reversal of the judgment. Her principal complaint is that appellees violated her due process rights by taking the default judgment without prior notice after she had appeared in the action. In the alternative, Hayes urges that appellees' pleadings did not support the judgment's imposition of liability against her and that there was no evidence to support the damages the judgment awarded. Concluding that Hayes had appeared and that appellees violated due process by taking the default judgment against her without notice, we will reverse the district court's judgment and remand.

---

[1] In her briefing, appellant uses "Hayes" rather than "Schoendienst" to refer to herself, so we will do the same.

# BACKGROUND

On August 22, 2011, appellees sued an entity known as Stewardship Advisors, LLC, alleging they had been victimized by a fraudulent investment scheme. About two weeks later, on September 11, 2011, appellees filed an amended petition that named additional defendants including Hayes. Appellees sought monetary damages, attorney's fees, declaratory relief, and equitable relief that included a temporary restraining order and temporary injunction to prohibit the defendants from "using, spending, investing, withdrawing, transferring[,] or otherwise dissipating" certain funds or assets allegedly obtained wrongfully from appellees. On September 21, 2011, the district court granted the TRO,[2] and set a hearing on the temporary injunction for October 3, 2011.

In advance of the scheduled hearing on the temporary injunction request, the parties, including Hayes, who was acting pro se, consented to and signed an agreed temporary injunction on September 30, 2011. The agreed temporary injunction recited that the parties "have reached an agreement that the Temporary Restraining Order . . . will be extended as an Agreed Temporary Injunction," found that appellees would probably prevail at trial and the other facts necessary to

---

[2] Specifically, the TRO restrained Hayes and the other defendants from:

(a) using, spending, investing, withdrawing, transferring[,] or otherwise dissipating any funds or assets contributed or earned by Plaintiffs or traceable to such funds; (b) using, spending, withdrawing, investing, transferring, or otherwise using any funds or assets related to the Flip; (c) using, spending, withdrawing, investing, transferring, or otherwise using any funds or assets related to SHW; and (d) using, spending, withdrawing, investing, transferring[,] or otherwise using any funds or assets that can be traced to the Flip or SHW, provided that Defendants may engage in any of the foregoing actions with the advance written consent of Plaintiffs.

justify the relief, and imposed restraints on the defendants' conduct that generally tracked those in the TRO.[3] The district court signed the agreed temporary injunction on October 3, 2011.

Meanwhile, as Hayes concedes, she was served with process yet did not file an answer. On October 20, 2011, after Hayes's answer date had passed, appellees obtained—without notice, as they acknowledge—an interlocutory default judgment against her. The default judgment awarded appellees $420,000 in actual damages, attorney's fees, an accounting of Hayes's records, a constructive trust against any assets in her possession that may be traced to funds or assets provided by appellees, and a declaration that any funds or assets in Hayes's possession that were traceable to appellees' investments belonged to them. Contemporaneously, appellees obtained—again, without notice to Hayes—a severance of their claims against the other defendants so as to make the interlocutory default judgment against Hayes final. This restricted appeal later followed.

## STANDARD AND SCOPE OF REVIEW

Hayes has opted to challenge the default judgment by restricted appeal, as the Texas Rules of Appellate Procedure permit her to do. *See* Tex. R. App. P. 30; *Insurance Co. of the*

---

[3] The agreed temporary injunction ordered Hayes and the other defendants:

> to desist and refrain from the following acts, without Plaintiffs' express written consent, until judgment in this cause is rendered by this Court: (a) using, spending, investing, withdrawing, transferring[,] or otherwise dissipating any funds or assets contributed or earned by Plaintiffs or traceable to such funds; (b) using, spending, withdrawing, investing, transferring, or otherwise using any funds or assets related to the Flip (as defined in Plaintiff's [sic] Amended Petition and Application for Temporary Restraining Order and Temporary Injunction); (c) using, spending, withdrawing, investing, transferring, or otherwise using any funds or assets related to SHW Capital 2011, LP; and (d) using, spending, withdrawing, investing, transferring, or otherwise using any funds or assets that can be traced to the Flip or to SHW Capital 2011, LP.

3

*State of PA v. Lejune*, 297 S.W.3d 254, 255 (Tex. 2009) (per curiam). As the party filing a restricted appeal, Hayes must show that: (1) she brought the appeal within six months after the trial court signed the complained-of judgment; (2) she was a party to the underlying suit; (3) she did not "participate" in the hearing that resulted in the complained-of judgment and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law; and (4) error is "apparent from the face of the record." *See* Tex. R. App. P. 26.1(c), 30; *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004). Only the fourth element, whether error is apparent from the face of the record, is in dispute here.

The "record," for purposes of a restricted appeal, consists of the clerk's record, the reporter's record (if one was made), and any evidence otherwise presented to the trial court before final judgment. *See Norman Commc'ns v. Texas Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam); *Alexander*, 134 S.W.3d at 848-49 ("The rule has long been that evidence not before the trial court prior to final judgment may not be considered in a [restricted appeal] proceeding." quoting *General Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 944 (Tex. 1991)). Error must be apparent from the face of the record, not inferred from the record. *Gold v. Gold*, 145 S.W.3d 212, 213 (Tex. 2005) (per curiam). The scope of our review in a restricted appeal is the same as in ordinary appeals; that is, we review the entire case. *Norman*, 955 S.W.2d at 270.

**ANALYSIS**

Hayes asserts that there are three reversible errors underlying the default judgment that are apparent on the face of the record: (1) appellees failed to give her notice of their intent to take the default judgment after she had appeared in the action, violating her due process rights (her

4

first issue); (2) appellees' pleadings did not support the judgment's imposition of liability against her (second issue); and (3) there was no evidence to support unliquidated damages the judgment awarded (third issue). We need only address Hayes's first issue.

A plaintiff may take a default judgment against a defendant who, like Hayes, fails to file an answer. *See* Tex. R. Civ. P. 239. The plaintiff may take the default judgment without further notice if the defendant has not filed a written answer or otherwise "appeared" in the action. *See Wilson v. Wilson*, 132 S.W.3d 533, 536 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). But if the defendant has answered or "appeared" in some manner, due process thereafter entitles the defendant to notice of any trial setting—and that includes a hearing on a motion for default judgment. *See LBL Oil Co. v. International Power Servs., Inc.*, 777 S.W.2d 390, 390-91 (Tex. 1989); *In re Marriage of Runberg*, 159 S.W.3d 194, 197 (Tex. App.—Amarillo 2005, no pet.). If, after the defendant has answered or otherwise "appeared," the plaintiff proceeds to obtain the default judgment without notice, due process requires that the judgment be set aside. *See LBL Oil Co.*, 777 S.W.2d at 390-91; *Runberg*, 159 S.W.3d at 197.

The face of the record establishes, and both sides acknowledge, that (1) Hayes did not file a written answer; and (2) appellees did not give Hayes notice of the hearing on the default judgment. Consequently, whether Hayes is entitled to relief turns entirely on whether she "appeared" in some way other than by filing an answer. In the absence of a written answer, "whether a defendant is considered to have 'appeared' depends on the nature and quality of the party's activities in the case." *Runberg*, 159 S.W.3d at 198 (quoting *Bradford v. Bradford*, 971 S.W.2d 595, 597 (Tex. App.—Dallas 1998, no pet.)); *see also* Tex. R. Civ. P. 120. It is thus a fact-specific analysis that considers the nature and quality of any written documents the defendant has filed in the case, any

5

participation in hearings, and any other personal activity by the defendant. *See Runberg*, 159 S.W.3d at 198; *Smith v. Amarillo Hosp. Dist.*, 672 S.W.2d 615, 617 (Tex. App.—Amarillo 1984, no writ). The ultimate focus of the inquiry is whether these acts by the defendant amount to an implicit recognition of the court's jurisdiction over the parties to decide a question other than the existence of jurisdiction itself. *See Smith*, 672 S.W.2d at 617; *accord Rojas v. Scharnberg*, No. 01-9-01039, 2011 Tex. App. LEXIS 1975, at *7-8 (Tex. App.—Houston [1st Dist.] Mar. 17, 2011, no pet.) (mem. op.). In the context of disputes over whether a defendant has waived prior or prospective challenges to personal jurisdiction by special appearance through actions impliedly recognizing the court's jurisdiction to decide broader questions (i.e., by making a "general appearance"), *see* Tex. R. Civ. P. 120a(1), the Texas Supreme Court has distilled the inquiry into the following alternative considerations:

> [A] party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court.

*Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (per curiam) (citing *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998)); *see also St. Louis & San Francisco R.R. Co. v. Hale*, 206 S.W. 75, 75 (Tex. 1918) ("It seems to be almost uniformly held that a general appearance is entered whenever the defendant invokes the judgment of the court, in any way, on any question other than that of the court's jurisdiction, without being compelled to do so by previous rulings of the court sustaining the jurisdiction.").

Hayes contends that her act of consenting to and signing an agreed temporary injunction—an order, signed by the district court, that restrains her conduct—amounts to the sort of

implicit recognition of the court's jurisdiction over her that rises to the level of an appearance. In support, she refers us to a line of cases holding that a party's assent to an agreed judgment or other final order constitutes an appearance such that the party could be bound to the order despite defects in service. *See In re C.R.B.*, 256 S.W.3d 876, 877-78 (Tex. App.—Texarkana 2008, no pet.) (party appeared by signing final order in SAPCR as "approved and consented to in both form and substance"); *Spivey v. Holloway*, 902 S.W.2d 46, 48 (Tex. App.—Houston [1st Dist.] 1995, no writ) (party appeared and waived service by signing divorce decree); *Terry v. Caldwell*, 851 S.W.2d 875, 876 (Tex. App.—Houston [14th Dist.] 1993, no writ) (party appeared and waived service by signing agreed modification in SAPCR suit). The logic of these decisions, as the court of appeals in *C.R.B.* observed, is that a defendant who agrees to a judgment against it impliedly consents to the court's jurisdiction over it to resolve questions broader than jurisdiction itself and recognizes that an action was properly pending. *See C.R.B.*, 256 S.W.3d at 877-78 (citing *Trejo*, 142 S.W.3d at 304; *Dawson-Austin*, 968 S.W.2d at 322). Indeed, it seems self-apparent that a defendant who consents to a judgment against it necessarily acknowledges that the court had jurisdiction to render that judgment in the first place.

Appellees urge that these cases are inapposite because each involved judgments or other final orders. In contrast to these final orders, appellees emphasize, the agreed temporary injunction here does not finally resolve the underlying dispute or permanently alter the status quo, but is intended merely to preserve the status quo pending that final resolution. However, as Hayes points out, Texas courts have also held that a defendant's agreement to an order granting temporary injunctive relief can likewise constitute an appearance. Hayes refers us to *Lette v. Brooke Corporation*, in which the court upheld a judgment compelling arbitration and confirming the

7

arbitration award against parties that included a partnership that was neither named as a defendant in the underlying lawsuit nor served. No. 13-02-00527-CV, 2004 Tex. App. LEXIS 7205, at *24 (Tex. App.—Corpus Christi Oct. 14, 2004, pet. denied) (mem. op.). The court reasoned in part that the partnership had appeared in the action by agreeing to a temporary injunction. *Id*. at *22-24. Appellees urge that *Lette* is distinguishable because the partnership had participated in the court-ordered arbitration, suggesting that the case is akin to those in which defendants have been held to have appeared by participating in court hearings.[4] However, the primary focus of the court's analysis is its conclusion that the partnership, by agreeing to the temporary injunction, had invoked the court's jurisdiction on some question other than jurisdiction. *See id*.

Similarly, our independent research has yielded *Runberg*, in which the Amarillo Court of Appeals held that a defendant had appeared, so as to be entitled to notice of a default-judgment hearing in a divorce proceeding, by announcing "ready" at a hearing on temporary orders and entering into agreed temporary orders that were in the nature of injunctive relief. *See* 159 S.W.3d at 198-99. Although the defendant had participated in the hearing on temporary orders by announcing "ready" and joining in submitting the agreed temporary orders for court approval, *see id.*, the court also deemed significant the mere fact that he had "agreed to subject himself to a detailed court order—the injunction—which restricted his personal freedom and ability to deal with his property and finances." *Id.* at 199.

While perhaps not as "detailed" or "extensive" as the injunctive relief in *Runberg*, *see id.* at 198-99, the agreed temporary injunction here is nonetheless similar in nature—it restricts

---

[4] *See, e.g.*, *Wichita Cnty. v. Robinson*, 276 S.W.2d 509, 512 (Tex. 1954) (holding that a party's examination of witnesses or offering of testimony constitutes a general appearance).

Hayes's personal freedom and ability to deal with her property and finances.[5] We also observe that while the agreed injunctive relief here, as in *Runberg* and *Lette*, was temporary in nature, the order here explicitly contemplated an eventual trial on the merits of appellees's claims against the defendants, including Hayes, before the district court. Furthermore, Hayes signed the agreed temporary injunction without any sort of reservation regarding the district court's jurisdiction or the substance of the order, nor has she even contested these issues. *Cf. In re M.G.M.*, 163 S.W.3d 191, 200-01 (Tex. App.—Beaumont 2005, no pet.) (defendant did not waive special appearance by agreeing to extension of protective order; order was expressly "subject to and without prejudicing or waiving any plea to the jurisdiction or special appearance by Respondent"). Hayes's unqualified written agreement to a temporary injunction having these features are indicative of her recognition that the district court had jurisdiction over her to decide questions beyond jurisdiction itself and that the underlying action was properly pending—i.e., she made an appearance—and there is nothing in the record that would suggest a contrary conclusion. *See C.R.B.*, 256 S.W.3d at 877-78. Under the circumstances here, we hold that Hayes appeared by signing the district court's agreed temporary injunction. *See id.*; *Spivey*, 902 S.W.2d at 48; *Terry*, 851 S.W.2d at 876.

In contending otherwise, appellees rely on what they portray as an established principle of Texas law that entering into an "extra-judicial agreement" to extend a temporary restraining order is not an appearance, and they suggest that this is all that happened here. In support, appellees cite authorities addressing the implications of a party's entry into a rule 11 agreement to extend a TRO, with particular emphasis on this Court's decision in *Redwood Group, L.L.C. v. Louiseau*, 113 S.W.3d 866, 870-72 (Tex. App.—Austin 2003, no pet.). In *Louiseau*, we

---

[5] *See supra* note 3.

held that a defendant had not appeared by entering into a rule 11 agreement to extend a TRO. *Id.* at 872. The rule 11 agreement at issue was later attached as an exhibit to a motion to extend the TRO filed by one of the parties (the record did not indicate by whom) on the ground that the parties had agreed to the extension. *See id.* at 870-71. In response, the court granted the extension in an order to which it likewise attached the rule 11 agreement. *See id.* In concluding that the rule 11 agreement did not establish that the defendant had appeared, we observed that: (1) the agreement explicitly disclaimed that the defendants were, by entering into the agreement, waiving their rights to assert a special appearance or otherwise contest jurisdiction; (2) in the Court's view, "the agreement itself invoked nothing. It was no more than a private agreement between the parties until 'tendered to the Court' for an extension and it sought nothing unless and until it was so tendered"; (3) the agreement had not been filed "in the cause in the ordinary sense implied by Rule 11, that is to say, as an independent paper in the cause"; and (4) the record did not indicate whether the defendant or some other party had filed the agreement as an attachment.[6] *See id.* at 870-72.

Appellees similarly rely on *Crystalix Group International, Inc. v. Vitro Laser Group USA, Inc.*, in which the Dallas Court of Appeals concluded that a defendant did not make a general appearance by signing two rule 11 agreements that extended a TRO, one of which was filed with the trial court. 127 S.W.3d 425, 426 (Tex. App.—Dallas 2004, pet. denied). The appellate court reasoned:

> Neither of the rule 11 agreements in this case change the status of any action with the court, nor do they request any action from the court. The TRO was already in place,

---

[6] We also noted that the rule 11 agreement attached to the court's signed order was "curiously" dated twelve days after the date the order was signed. *Redwood Group, L.L.C. v. Louiseau*, 113 S.W.3d 866, 871 (Tex. App.—Austin 2003, no pet.).

and [the plaintiff] simply sought to continue the order as it was. The February 26 rule 11 agreement did not change the material components of the TRO in any way. The March 5 agreement merely showed that [the defendant] agreed not to seize or interfere with the system. Although the agreement stated "pending adjudication by the court," the agreement did not suggest the action was properly before the trial court, and it did not invoke any involvement from the trial court. This agreement also merely maintained the status quo from the court's perspective. Furthermore, [the defendant], through counsel, merely signed the agreement.

*Id*. at 428. Under those facts, the court held that "the mere signature on the agreements neither invoked the judgment of the trial court on a matter other than jurisdiction, sought affirmative action, nor recognized a case was *properly* pending before the court." *Id.* (emphasis in original) (citing *Dawson-Austin*, 968 S.W.2d at 322).

In addition to some factual distinctions between the restraints in these cases and the TRO here,[7] there are fundamental differences between a rule 11 agreement and an agreed court order. As the Texas Supreme Court observed in *Trejo*, which issued after *Redwood Group* and *Crystalix*, "while filing a Rule 11 Agreement with the trial court is a requirement for enforcement, it is not in and of itself a request for enforcement or any other affirmative action by the trial court." 142 S.W.3d at 306. Accordingly, the supreme court concluded that a defendant had not waived its special appearance by filing a rule 11 agreement that extended the defendant's time to file an initial responsive pleading, even if the agreement was not expressly made subject to the special appearance. *Id*. Simply stated, a rule 11 agreement signed by the parties and filed with a court is not in itself a court order, and does not in itself invoke the court's jurisdiction or implicitly concede it. By contrast, an agreed temporary injunction is a court order, not an extrajudicial agreement, and can in

---

[7] E.g., the reservation of the defendant's right to contest jurisdiction in *Louiseau*.

11

itself represent the exercise of, and the parties' submission to, the court's jurisdiction over them to decide issues other than jurisdiction. In short, appellees' rule 11 agreement cases are not on point.

As further support for their position, appellees point to *Exchequer Financial Group, Inc. v. Stratum Development, Inc.* as authority for the proposition that merely acquiescing in or passively agreeing to an order for affirmative relief sought by another party does not constitute an appearance. 239 S.W.3d 899, 905 (Tex. App.—Dallas 2007, no pet.). In that case, Exchequer appealed a trial court order granting Stratum's special appearance and dismissing Exchequer's claims against Stratum. *Id*. at 902. Exchequer argued that Stratum had made a general appearance by signing a proposed abatement order that had been filed by Stratum's co-defendants. *Id*. at 905. Stratum's counsel signed the order "approved as to form only." *Id*. In rejecting Exchequer's argument, the court reasoned in part that Stratum "did not file the motion requesting the plea in abatement" and had not requested affirmative relief, but "agreed only to an order regarding another party's request for affirmative relief." *Id*. Accordingly, the court concluded that "counsel's signature approving the form of the order granting a plea in abatement did not constitute a general appearance." *Id*.

Appellees assert that this holding is "directly analogous to the instant case." We disagree. Especially in the context of its having filed a special appearance to contest jurisdiction, Stratum's agreement to an abatement order, particularly "as to form only," did not amount to a recognition of the court's jurisdiction to decide anything other than the pending jurisdictional challenge. On the contrary, it suspended the court's ability to act. *See Dawson-Austin*, 968 S.W.2d at 323 (motion for continuance "did not request affirmative relief inconsistent with Dawson-Austin's assertion that the district court lacked jurisdiction, which, as we have said, is the test for a general

12

appearance"). In contrast, in agreeing without qualification to the temporary injunction here, Hayes subjected herself to a court order that restricted her personal freedom and ability to deal with her property and finances in anticipation of trial on the merits. *See Runberg*, 159 S.W.3d at 199-200.[8]

---

[8] Appellees also point to other cases which, in their view, illustrate that parties may participate in court proceedings "more fully" than Hayes did and still not be considered to have appeared. *See Seals v. Upper Trinity Reg'l Water Dist.*, 145 S.W.3d 291, 296-97 (Tex. App.—Fort Worth 2004, pet. dism'd) (filing a statement of condemnation including request for injunction to survey land and attending status conference hearing did not constitute appearance); *Smith v. Amarillo Hosp. Dist.*, 672 S.W.2d 615, 616-17 (Tex. App.—Amarillo 1984, no writ) (unserved defendant who sat at counsel table during trial had not entered appearance); *Investors Diversified Servs., Inc. v. Bruner*, 366 S.W.2d 810, 814-15 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.) (letter written by defendant to the court did not constitute an appearance). None of these cases is instructive. *Seals* was decided "[i]n light of the unique procedural process involved in eminent domain cases," and has no bearing on the instant case. 145 S.W.3d at 294. *Smith* addressed whether a defendant's mere physical presence in court amounted to an appearance. The court held it did not, observing that the defendant "did nothing except sit at the counsel table, at the court's request . . . . He filed no pleadings, neither took nor requested affirmative action and did not participate in anything that occurred. He was, at best, a silent figurehead observing the proceedings." 672 S.W.2d at 617; *see also id.* at 617 ("[T]he mere presence of a party or his attorney in the courtroom at the time of a hearing or a trial, where neither participates in the prosecution or defense of the action, is not an appearance." (quoting 2 Roy W. McDonald, *Texas Civil Practice* § 9.04.C (1982))). The *Bruner* court held that appellants did not make an appearance by requesting that the trial court file a letter explaining deficiencies in service that appellants' counsel sent to the plaintiffs. *Id.* at 814-15. Such conduct is consistent with a challenge to the court's jurisdiction, and would not constitute an appearance.

Furthermore, we note that two of our sister courts have recently suggested the existence of a categorical rule that appearing in matters "ancillary and prior to the main suit," including agreeing to temporary injunctive relief, does not constitute a general appearance that waives a special appearance. *See Carey v. State*, No. 04-09-00809-CV, 2010 Tex. App. LEXIS 5683, at *8 (Tex. App.—San Antonio July 21, 2010, pet. denied) (mem. op.); *accord Grynberg v. M-I L.L.C.*, — S.W.3d —, No. 13-11-00195-CV, 2012 Tex. App. LEXIS 10747, at *32-33 (Tex. App.—Corpus Christi Dec. 28, 2012, no pet.) (citing *Carey* for that proposition). Leaving aside that Hayes, unlike the defendants in *Carey* and *Grynberg*, has not contested personal jurisdiction, a close examination of the authorities cited to support that proposition reveals it to be an overbroad oversimplification. *Carey*, for example, cites *In re M.G.M.*, 163 S.W.3d 191, 200-01 (Tex. App.—Beaumont 2005, no pet.), which, as noted, involved an agreed protective order that expressly reserved the defendant's right to challenge personal jurisdiction. The court similarly relied on *Perkola v. Koelling & Assocs.*, 601 S.W.2d 110, 111-12 (Tex. Civ. App.—Dallas 1980, writ dism'd), and *Turner v. Turner*, No. 14-98-00510-CV, 1999 Tex. App. LEXIS 491, at *6-7 (Tex. App.—Houston [14th Dist.]

13

Finally, by concluding that Hayes appeared by agreeing to the temporary injunction here, we do not suggest that agreeing or acquiescing to some form of temporary injunctive relief will *always* constitute an appearance. The analysis, again, is dependent upon the particular facts presented, and plainly there are circumstances where a defendant's agreement to a temporary injunction will not, in context, constitute the sort of recognition of the court's jurisdiction that amounts to an appearance. *See M.G.M.*, 163 S.W.3d at 200-01. We conclude only that Hayes's particular conduct here, considered in the context of the present record, amounted to an appearance that triggered due-process requirements that she receive notice before appellees sought a default judgment against her. *See LBL Oil Co.*, 777 S.W.2d at 390-91; *Runberg*, 159 S.W.3d at 197. There is error on the face of the record—appellees did not give such notice before obtaining the default judgment. We sustain Hayes's first issue.

## CONCLUSION

Because we have sustained Hayes's first issue and this holding entitles her to the entirety of the appellate relief she seeks, we do not reach her other issues. *See* Tex. R. App. P. 47.1. We reverse the default judgment and remand the cause for further proceedings. *See LBL Oil Co.*, 777 S.W.2d at 390-91; *Runberg*, 159 S.W.3d at 197.

---

Jan. 28, 1999, no pet.) (not designated for publication), two cases involving an attorney's mere physical presence at a temporary injunction hearing—i.e., a situation similar to *Smith*—and a case involving the filing of a discovery mandamus, *Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261, 267 (Tex. App.—San Antonio, pet. dism'd), which is an action not necessarily inconsistent with a challenge to personal jurisdiction, *see Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 306-07 (Tex. 2004). In short, we see nothing in *Carey* or *Grynberg* that should alter our conclusion that Hayes appeared by agreeing to the temporary injunction at issue here.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Field

Reversed and Remanded

Filed:   March 15, 2013

15