Opinion filed August 14, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed August 14,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00073-CV 

                                                     __________

 

                  JACI
JOHNSON AND JEFFREY JOHNSON, Appellants

 

                                                             V.

 

                                      LEONARD
POUNDS, Appellee

 



 

                                        On
Appeal from the County Court at Law

 

                                                        Midland
County, Texas

 

                                                Trial
Court Cause No. CC 13,610

 



 

                                             M E M O R A
N M U M  O P I N I O N

 








Jaci
Johnson and Jeffrey Johnson brought this suit in Midland against Leonard Pounds,
a resident of New Mexico, alleging that funds due them from their mother=s estate were
misappropriated or converted by Pounds.  Pounds had married their mother
shortly before her death and was the executor of her will. The will was
probated in New Mexico.  Pounds filed a special appearance, contesting personal
jurisdiction.  The trial court granted the special appearance motion, finding
that Pounds and the testatrix were residents of New Mexico, that Pounds had not
had the minimum contacts necessary to confer personal jurisdiction in Texas,
and that the operative facts concerning the estate and Pounds only involved New
Mexico and its law.  We affirm.

Background
Facts

Pounds
has been a resident of New Mexico since 1991.  In 1992, Pounds and Sheila
Denise Johnson, the mother of appellants, began their relationship in New
Mexico.  In 1993, Sheila was diagnosed as having breast cancer.  She and Pounds
contemplated marriage but postponed the marriage due to her health problems. 
They were finally married in New Mexico on July 13, 1996.  Sheila died nine
days later on July 22, 1996, while in a Midland hospital.

In
her will, Sheila named Pounds as the personal representative, and Pounds filed
an application for probate of the will in New Mexico in August 1996.  Under the
terms of the will, Sheila=s
residuary estate was to be divided in three equal shares: one-third to Leonard
Pounds, one-third to Jeffrey Johnson, and one-third to Jaci Johnson.  Jeffrey
and Jaci were minors at the time, and the will provided that their shares would
be placed in a trust with Pounds as the trustee.

Prior
to their marriage, Sheila had opened a money market account at Sunwest Bank of
Hobbs, New Mexico.  Pounds was a cosigner on the account, and the account had a
Apayable-on-death@ provision for the funds in
the account to be payable directly to Pounds upon the death of Sheila.  Pounds
stated that the funds in the account were from a medical malpractice settlement
received by Sheila and that, at the time of her death, there was $72,000 in the
account.  The account is the primary focus of appellants= lawsuit.  Although the account had the
payable-on-death box checked, appellants maintain that the reason Sheila
created trusts in her will was that the funds in the account would be divided
into the three equal shares with their shares being placed in a testamentary
trust.  Appellants would then receive distributions from the trust when each
reached twenty-one and twenty-five years of age.








After
Sheila=s death, Pounds
subsequently lived for a period of time with a woman named Linda Gassaway.  In
2001, Pounds then married another woman.  In 2005, Pounds discovered that
Gassaway had used an expired debit card that drew on his separate bank account
at Sunwest Bank of Hobbs.  The unauthorized purchases by Gassaway utilizing the
debit card caused Pound=s
account to become overdrawn, and Sunwest Bank automatically withdrew funds from
the payable-on-death account to cover the overdrafts.  Pounds estimated that
Gassaway stole between $26,000 and $30,000.  Pounds stated that he initiated a
criminal prosecution of Gassaway, but the charges were dismissed.

Jeffrey
and Jaci complain that Pounds did not tell them about the theft of the money by
Gassaway and that Pounds misled them.  Their evidence consisted of an affidavit
by their father Eric Johnson, affidavits by Jeffrey and Jaci, and references to
statements by Pounds in his deposition and in his affidavit.  According to Eric=s affidavit, he had
telephone conversations from 1997 to 2006 with Pounds during which Pounds
represented to him that Jeffrey and Jaci would receive distributions from the
estate that would amount to about $22,000 each.  Eric stated that he heard
about the theft by Gassaway for the first time in 2006.  The affidavits by
Jeffrey and Jaci are similar.  They state that, while Acommunicating@
with Pounds, they were told by Pounds that they would receive their share of
the money that their mother Aleft
as a result of the settlement proceeds from her malpractice claim@ and that Pounds would send
part of the money when they reached twenty-one and the balance when they
reached twenty-five years of age.  The three affidavits do not state that
Pounds was in Texas when he made the representations, only that the affiants
were Ain the State of
Texas.@  The evidence
suggests that Pounds was in New Mexico during the telephone conversations
involving his alleged representations.  For example, Pounds testified at one
point that Eric instigated a telephone call to him in New Mexico to discuss
issues concerning Sheila=s
estate.

Jeffrey
and Jaci stated that they did receive $14,000 as a partial distribution from
the estate in the spring of 2006, although Pounds testified that he made these
payments from his own account. For our analysis of the question of
jurisdiction, we will assume that Pounds represented that the distributions
were made from the estate.  

In
three points of error, appellants argue that there were sufficient minimum
contacts for personal jurisdiction over Pounds in Texas, that the trial court
abused its discretion because Pounds did not carry his burden of proof at the
special appearance hearing, and that the court=s
findings of fact were insufficient to support its order granting the special
appearance motion of Pounds.

Standard
of Review








The
plaintiff bears the initial burden of pleading sufficient allegations to bring
a nonresident defendant within the provisions of the Texas long‑arm
statute.  Tex. Civ. Prac. & Rem.
Code Ann. ''
17.041‑.045 (Vernon 2008); BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 793 (Tex. 2002).  When the plaintiff meets this burden, the
burden shifts to the nonresident defendant to negate all possible grounds for
personal jurisdiction.  BMC Software, 83 S.W.3d at 793; Kawasaki
Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).  The existence
of personal jurisdiction is a question of law that must sometimes be preceded
by the resolution of underlying factual disputes.  Preussag Aktiengesellschaft
v. Coleman, 16 S.W.3d 110, 113 (Tex. App.CHouston
[1st Dist.] 2000, pet. dism=d
w.o.j.).  In considering an order granting or denying a special appearance, we
may review a trial court=s
findings on disputed factual issues for both legal and factual sufficiency.  BMC
Software, 83 S.W.3d at 794.   However, when the underlying facts are
undisputed or otherwise established, we conduct a de novo review of the trial
court=s order as a
question of law.  BMC Software, 83 S.W.3d at 794; El Puerto de
Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V., 82 S.W.3d
622, 628 (Tex. App.CCorpus
Christi 2002, pet. dism=d
w.o.j.); Goodenbour v. Goodenbour, 64 S.W.3d 69, 75 (Tex. App.CAustin 2001, pet. denied); 
Preussag Aktiengesellschaft, 16 S.W.3d at 113.   In any event, in
conducting its review, an appellate court considers all of the evidence in the
record.  El Puerto de Liverpool, S.A. de C.V., 82 S.W.3d at 628.  Pounds
disputes that he made some of the representations during the telephone calls,
but we will adopt appellants=
version of the facts.  Even if we assume appellants= version, appellants have not demonstrated
that the trial court erred in holding that Texas may not assert jurisdiction
over Pounds.

Personal
Jurisdiction

A
Texas court may assert personal jurisdiction over a nonresident defendant only
if the requirements of both the Due Process Clause of the Fourteenth Amendment
to the United States Constitution and the Texas long‑arm statute are
satisfied.  CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996).  The
Texas long‑arm statute reaches Aas
far as the federal constitutional requirements of due process will allow.@  Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226
(Tex. 1991). 








Personal
jurisdiction over nonresident defendants is constitutional when two conditions
are met:  (1) the defendant has established minimum contacts with the forum
state and (2) the exercise of jurisdiction comports with traditional notions of
fair play and substantial justice.  BMC Software, 83 S.W.3d at 795
(citing Int=l
Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  Appellants have met
neither of these two conditions.

The
minimum contacts analysis requires that a defendant Apurposely avail@
itself of the privilege of conducting activities within Texas, thus invoking
the benefits and protections of our laws.  Id. (citing Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  The Atouchstone@
of due process analysis is Apurposeful
availment.@  Michiana
Easy Livin=
Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005).  There are three
parts to a Apurposeful
availment@ inquiry: 
(1) only the defendant=s
contacts with the forum are relevant; (2) the contacts relied upon must be
purposeful rather than random, fortuitous, or attenuated; and (3) the defendant
must have sought some benefit, advantage, or profit by availing itself of
jurisdiction.  Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575
(Tex. 2007).  

The
defendant=s
activities, whether they consist of direct acts within Texas or conduct outside
Texas, must justify a conclusion that the defendant could reasonably anticipate
being haled into a Texas court.  Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 806 (Tex. 2002) (citing World‑Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  Jurisdiction is
premised on notions of implied consent that, by invoking the benefits and
protections of a forum=s
laws, a nonresident consents to suit there.  Michiana Easy Livin= Country, Inc., 168
S.W.3d at 785.   The quality and nature of the defendant=s contacts with the forum state, rather than
their number, are important in analyzing minimum contacts.  Guardian Royal,
815 S.W.2d at 230 n.11.

A
defendant=s contacts
with a forum state can give rise to either general or specific jurisdiction.  BMC
Software, 83 S.W.3d at 795-96; Guardian Royal, 815 S.W.2d at 227‑28.  
General jurisdiction is present when a defendant=s
contacts are continuous and systematic permitting the forum to exercise
personal jurisdiction over the defendant even if the cause of action did not
arise from or relate to the activities conducted within the forum.  CSR Ltd.,
925 S.W.2d at 595.   General jurisdiction requires a showing that the defendant
conducted substantial activities within the forum, a more demanding minimum
contacts analysis than for specific jurisdiction.  Id.  Appellants argue
that the trial court below also had general jurisdiction over Pounds; however,
they have not provided evidence to demonstrate minimum contacts for specific
jurisdiction.  Therefore, it follows that the more demanding analysis for
general jurisdiction has not been met.








Specific
jurisdiction is present when the cause of action arises from or is related to
the defendant=s
contact with the forum state.  Id.; Guardian Royal, 815
S.W.2d at 227.   When specific jurisdiction is asserted, the minimum contacts
analysis focuses on the relationship among the defendant, the forum, and the
litigation.  Guardian Royal, 815 S.W.2d at 228.  Specific jurisdiction
is established if the defendant=s
alleged liability arises out of or is related to an activity conducted within
the forum state.  Moki Mac, 221 S.W.3d at 575-76.  As we will discuss,
Pounds did not have sufficient contacts with Texas to satisfy the minimum
contacts requirement.  Appellants=
allegations of Pounds=s
liability are not related to an activity conducted within Texas.            

Minimum
Contacts Analysis

As
mentioned, the touchstone of the due process analysis is Apurposeful availment.@  Minimum contacts are
sufficient to establish personal jurisdiction only if Pounds purposefully
availed himself of the privilege and benefits of conducting activities within
Texas.  Only his contacts are relevant; his contacts must have been purposeful,
rather than random, fortuitous, or attenuated; and his contacts must
demonstrate that he sought some benefit, advantage, or profit in availing
himself of the jurisdiction of Texas.  Moki Mac, 221 S.W.3d at 575; Holten,
168 S.W.3d at 784-85.            To demonstrate the required minimum contacts,
appellants argue that the telephone calls were sufficient to create an oral
contract and to provide the basis for their alleged tort of fraud by Pounds. 
Appellants also argue that Pounds made trips to Texas to shop, trips to Texas
for his employer, and other occasional trips to Texas and that these trips
satisfied the minimum contacts requirements.  








Appellants
point to the affidavit of their father where he stated that Pounds referred to
a Asharing agreement@ that Jeffrey and Jaci
would share in their mother=s
estate and that Pounds would make distributions to them.  First, the evidence
fails to demonstrate that Pounds entered into a contract with appellants.  Second,
even assuming a contract, contract negotiations with a Texas resident and
contract payments sent to Texas are insufficient to establish jurisdiction when
the entire substance of the contract is performed outside the state.  Bastian
Material Handling, L.L.C. v. Stelluti Kerr, L.L.C., 229 S.W.3d 407 (Tex.
App.CEastland 2007, no
pet.); Blair Commc=ns,
Inc. v.  SES Survey Equip. Servs., Inc., 80 S.W.3d 723, 727 (Tex. App.CHouston [1st Dist.] 2002,
no pet.).  A contract with a nonresident defendant does not alone constitute a
sufficient Acontact@ for due process purposes. 
Rudzewicz, 471 U.S. 462, 478; IRA Res., Inc. v. Griego,
221 S.W.3d 592, 598 (Tex. 2007).  Any Aperformance@ by Pounds would only
involve the sending of money from New Mexico.  

Appellants
also claim that Pounds made fraudulent representations to them during the
telephone calls (e.g., that he would make distributions to them even though he
knew the money was gone).  Allegations or evidence of torts committed during
telephone calls by a nonresident defendant with persons in Texas are not
adequate to establish specific jurisdiction.  Holten, 168 S.W.3d at
791-92.  The focus for jurisdiction must be on the contacts of Pounds with
Texas.  The focus is not on the claim of Jeffrey and Jaci that they relied upon
representations of Pounds.  See Holten, 168 S.W.3d at 790-92; Morris
v. Kohls-York, 164 S.W.3d 686, 696 (Tex. App.CAustin
2005, pet. dism=d). 
The telephone calls were not sufficient contacts.

Appellants
also list a number of contacts by Pounds with Texas that they claim meet the
minimum contacts requirements: he is employed by a company whose home office is
in Tyler; he occasionally works on oil and gas wells in Texas for his employer;
he lived in Perryton prior to moving to New Mexico; he has taken vacations and
traveled on Texas highways; and he has shopped in Texas and paid Texas sales
taxes.  Those contacts were random, fortuitous, or attenuated; they do not
satisfy the requirements of minimum contacts for jurisdiction in Texas.  See
PHC-Minden, L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 167 (Tex.
2007); Virtual Healthcare Servs., Ltd. v. Laborde, 193 S.W.3d 636 (Tex.
App.CEastland 2006, no
pet.).  Appellants have not provided evidence that their causes of action arose
from or were related to activities conducted by Pounds within Texas; appellants
were required to do so to establish specific jurisdiction.  See Moki Mac,
221 S.W.3d at 575-76.  Appellants have not shown sufficient contacts with Texas
by Pounds to satisfy specific jurisdiction, and they have not shown the more
demanding minimum contacts analysis for general jurisdiction.  General
jurisdiction is Adispute-blind@ because it permits a Texas
court to Aexercise
jurisdiction over a nonresident defendant based on any claim, including claims
unrelated to the defendant=s
contacts with the state.@ 
PHC-Minden, 235 S.W.3d at 168; CSR Ltd., 925 S.W.2d at 595.  








The
trial court made a number of findings that were not challenged:  Pounds and
Sheila were residents of New Mexico; Sheila died in Texas, but her will was
probated in New Mexico; New Mexico law and rulings will guide matters
relating to Sheila=s
estate; New Mexico law will determine the claims of appellants; Sheila entered
the payable-on-death account prior to her marriage and her death, and the
account contained Athe
bulk of what the [appellants] are complaining about in this action.@[1]
The court further found that Pounds did not invoke Texas law or purposely seek
to administer this estate in Texas, and the allegations of appellants, even if
established, were not such meaningful contacts as to impose the jurisdiction of
Texas over Pounds.  We agree with the findings of the trial court.

In
addition to the minimum contacts requirement not being met, the exercise of
jurisdiction by a Texas court over Pounds in this case would offend traditional
notions of fair play and substantial justice.  In making this determination, we
examined Pounds=s
contacts with Texas in light of the following factors: (1) the burden on Pounds
to litigate in Texas; (2) Texas=s
interest in adjudicating the dispute; (3) appellants= interest in obtaining convenient and
effective relief; (4) the interstate judicial system=s interest in obtaining the most efficient
resolution of controversies; and (5) the shared interest of the several States
in furthering fundamental substantive social policies. Guardian Royal,
815 S.W.2d at 232.  The records of Pounds, the estate, and Sunwest Bank of
Hobbs are in New Mexico; everything in connection with the payable-on-death
account occurred in New Mexico; appellants can obtain convenient and
effective relief in New Mexico if they are entitled; the most efficient
resolution of the controversy will be in New Mexico; and the policies of New Mexico
control the questions in this case, not those of Texas.  Appellants= three points of error are
overruled.

This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

August 14, 2008

Panel consists of:  Wright, C.J.,


McCall, J., and Strange, J.









[1]Appellants only challenged the tenth finding of the
trial court: ANew Mexico law and rulings will guide and direct the
interpretation and any resulting questions as [to] the P.O.D. account.@  However, appellants have not provided argument or
authorities to support their challenge.