**AFFIRM; and Opinion Filed July 16, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00080-CV

### WILLIAM KLUG, Appellant
### V.
### J.P. WICKERT AND KARL BOVAY,
### D/B/A APPLAUSE ENTERTAINMENT, Appellees

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-08158-M**

## MEMORANDUM OPINION
Before Justices Evans, Brown, and Whitehill[1]
Opinion by Justice Brown

Appellant William Klug appeals the trial court's order dismissing his lawsuit against appellees J.P. Wickert and Karl Bovay, d/b/a Applause Entertainment, for want of personal jurisdiction. Klug contends the trial court erred in granting appellees' special appearance and subsequently dismissing his lawsuit because appellees did not negate all grounds asserted by Klug for the court's exercise of personal jurisdiction. For reasons that follow, we affirm the trial court's dismissal order.

### BACKGROUND

In 2011, Klug, a Dallas County resident, sued appellees, who are Manchester, Vermont residents, in Dallas County District Court. Neither appellee maintains a regular place of business

---

[1] Justice Bill Whitehill succeeded Justice Kerry FitzGerald, a member of the original panel, following Justice FitzGerald's retirement. Justice Whitehill has reviewed the briefs and the record before the Court.

in Texas or has an agent here for service of process. Klug's pleadings assert that both appellees were engaged in and doing business in Texas. Specifically, Klug alleged appellees contracted with a Texas resident and the contract was to be performed, in whole or in part, in Texas. Klug also asserted both appellees committed a tort in Texas and committed acts outside of Texas that had foreseeable consequences in Texas. Klug's pleadings further alleged the suit arises out of appellees' business in Texas and that both Wickert's and Bovay's contacts with Texas are continuous and systematic.

According to Klug's pleadings, appellees are in the business of selling items related to live theater, including stage theater window cards or posters. Appellees maintain an interactive, commercial website from which people all over the United States and around the world may order items. They also maintain a telephone number for out-of-state residents to use to place orders. In reliance upon representations by appellees directed to him in Texas, Klug delivered to appellees in Vermont a large quantity of stage theatre window cards to sell on their website. The parties had a contract that required appellees to safeguard the cards and pay Klug a percentage of sales. Klug alleged appellees breached the contract by failing to pay him for the sold theater cards, failing to return all of the unsold cards to him in Texas, and failing to safeguard the cards. Klug asserted a claim for fraud, alleging appellees directed into Texas false misrepresentations of material facts which induced him to deliver his cards to them. Based on these same facts, Klug also asserted claims for negligence, conversion, conspiracy, and bailment.

Appellees filed a joint special appearance to object to the court's jurisdiction. They asserted neither of them had sufficient minimum contacts with Texas to confer jurisdiction on the trial court and neither had ever purposefully availed themselves of Texas. Appellees maintained they had not done business in Texas and not committed a tort in Texas. Although Wickert entered into an oral contract with Klug, performance was to occur in Vermont, not Texas. Klug

solicited Wickert in Vermont and shipped his collection to Vermont. Bovay was not a party to the contract. Appellees supported their special appearance with affidavits.

In his affidavit, Wickert stated he was a Vermont resident. He operates a business called Applause Entertainment, and it is a sole proprietorship owned and operated solely by him. Wickert buys and sells promotional and collectible material related to the theater, particularly Broadway productions. On September 13, 2007, Klug contacted Wickert by email and asked if Wickert would be willing to sell Klug's posters. Prior to that email, Wickert had no business dealings with Klug for at least five years. A copy of Klug's email is attached to the affidavit. The email stated:

> Due to health issues I am letting go of my poster collection to pay medical bills. I have sent the list to Roger at Triton Gallery and he is looking it over, but his consignment agreement is 50%. I will give you two first pick if you'd be willing to deal on 55%.

According to Wickert, he agreed to take about 100 specific items on consignment. Wickert maintains Klug ignored the limited nature of his request and instead shipped about 2200 items to his home in Vermont. When Wickert contacted Klug about the large shipment, Klug claimed he would make arrangements to have the items returned to Texas, but never did. Over a year later, Klug contacted police in Manchester, Vermont, to accuse Wickert of stealing his collection. When Wickert learned of the accusations, he shipped all of Klug's items back to him in Texas.

Wickert stated he had never done business in Texas or committed a tort in Texas. In a separate affidavit, Wickert stated that he did not know of any Texas resident to whom he had sold merchandise in the past five years.

Wickert stated in his affidavit that Bovay is his roommate and does not work for him or for Applause and was not involved in Wickert's contract with Klug. Bovay's affidavit contained similar information. Bovay stated he is a Vermont resident. Wickert is his roommate, and Bovay does not work for Wickert or for Applause. He had never spoken with Klug, other than

–3–

"brief exchanges of pleasantries" when he answered a phone call from Klug to Wickert. Bovay was not involved in the alleged contract between Wickert and Klug and performed no work related to the alleged contract. Bovay has never done business in Texas. He has never committed a tort in Texas.

In April 2012, the trial court held a hearing on appellees' special appearance at which the court heard testimony from Klug and the argument of counsel. Klug testified that he has lived in Texas since 1973. He entered into a business relationship with appellees for the purpose of having them buy his posters and sell them on their business interactive website. He testified that he dealt with both appellees. He testified he discussed business matters with Bovay, specifically, the selling of his inventory on the website. Klug stated that Wickert appeared to be the salesperson and Bovay appeared to be the person who took care of the finances. Klug testified that in August 2007, Wickert initiated discussions about purchasing Klug's theater cards. It came about when Klug and Wickert were having a conversation about being Stephen Sondheim fans. Klug told Wickert about a rare poster he had. Wickert had never heard of it or seen it before. Klug sent him a picture of it, and Wickert asked if he could buy it. Klug refused. Wickert then offered to sell the poster instead of buying it himself. When Klug still refused, Wickert offered to sell 200 posters. Wickert told Klug which posters he wanted. The 200 posters were the most valuable ones Klug owned. Because Klug would have been left with cards that were not very valuable, he told Wickert that if he was going to send him any of his posters, he was going to send all of them. They entered into an agreement under which appellees would list his posters for sale on their interactive website. Appellees were to send payment for any posters sold to Klug in Texas and did in fact send him a payment. Klug later asked for the remainder of his collection to be sent to him in Texas. Appellees returned some, but not all, of

the posters to him. According to Klug, he had fifteen to twenty conversations with appellees about selling his posters on their website. Wickert initiated some of the conversations.

Klug presented as evidence pages printed from the Applause website which show that a Texas resident can make a purchase from the website and have it shipped to Texas. Klug testified that, in 2006, he purchased a Broadway show poster from appellees' website, and appellees delivered it to him in Texas. Klug testified on cross-examination that he did not pay for that poster and that this lawsuit has nothing to do with that poster.

Klug acknowledged that he sent an email to Wickert in September 2007, in which he said he was looking to sell his poster collection. Klug testified that prior to the email he had already had conversations with Wickert about Wickert buying 200 posters. According to Klug, the email was just a continuation of those discussions.

The trial court signed an order on November 20, 2013, granting appellees' special appearance. Five days later, it issued an order dismissing the case for want of personal jurisdiction. This appeal followed.

### APPLICABLE LAW

Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002). In resolving the issue of personal jurisdiction, a trial court must frequently resolve questions of fact. *Id.* at 806. We review a trial court's decision to grant a special appearance de novo, but may be called upon to review the trial court's resolution of a factual dispute. *Id.* The trial court is the sole judge of witness credibility and the weight to be given testimony, and we will not disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence. *Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 927 (Tex. App.—Dallas 2010, no pet.). When, as here, the trial court does not issue findings of fact, reviewing courts should presume that the

trial court resolved all factual disputes in favor of its judgment. *Am. Type Culture Collection*, 83 S.W.3d at 806.

A Texas court may exercise personal jurisdiction over a nonresident only if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). The Texas long-arm statute provides that, in addition to other acts that may constitute doing business, a nonresident does business in this state if he (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state or (2) commits a tort in whole or in part in this state. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2015). The long-arm statute's broad "doing business" language allows the statute to reach as far as the federal constitutional requirements of due process will allow. *Retamco*, 278 S.W.3d at 337. Under a constitutional due-process analysis, personal jurisdiction is achieved when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the assertion of jurisdiction complies with "traditional notions of fair play and substantial justice." *Id.* at 338 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795–96 (Tex. 2002) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984)). Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Id.* at 796. Specific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis, unless, as here, all claims arise from the same forum contacts. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150–51 (Tex. 2013). General jurisdiction is established when a defendant's

contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software Belgium*, 83 S.W.3d at 796.

Under either a specific or general jurisdiction analysis, the relevant contacts are those through which a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Internet Advert. Grp. v. Accudata, Inc.*, 301 S.W.3d 383, 388 (Tex. App.—Dallas 2009, no pet.) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In determining purposeful availment, we consider three issues. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person. *Id.* Second, the contacts must be purposeful rather than random, fortuitous, or attenuated. *Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* The purpose of a minimum contacts analysis is to protect a nonresident defendant from being haled into court when its relationship with the forum state is too attenuated to support jurisdiction. *Id.* If a defendant has some contacts with Texas, further analysis is required to determine for general jurisdiction whether the contacts are so constant and pervasive "'as to render [the nonresident defendant] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 749, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2854, 2851, 2857 (2011)). For specific jurisdiction further analysis of any contacts is necessary to determine whether the contacts have a substantial connection to the operative facts of the litigation which are those facts that will be the "focus of the trial" to prove the liability of the defendant. *Moncrief Oil*, 414 S.W.3d at 156 (citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007)); *Stauffer v. Nicholson*, 438 S.W.3d 205, 212 (Tex. App.—Dallas 2014, no pet.). Only if minimum contacts are established does the court consider the second prong – whether

maintenance of the action offends traditional notions of fair play and substantial justice. *Internet Advert. Grp.*, 301 S.W.3d at 388.

Under the Texas long-arm statute, the plaintiff has the initial burden to plead sufficient allegations to confer jurisdiction. *Retamco*, 278 S.W.3d at 337. The defendant seeking to avoid being sued in Texas then has the burden to negate all potential bases for jurisdiction pleaded by the plaintiff. *Id.*

### DISCUSSION

In Klug's sole issue, he contends appellees failed to negate all grounds asserted for the exercise of jurisdiction. He maintains the trial court has both specific and general jurisdiction over appellees.

We first examine the court's jurisdiction over Bovay. There is a factual dispute about whether Bovay had a role in the business of Applause. Appellees presented affidavit evidence that Bovay was merely Wickert's roommate, was not employed by Wickert or Applause, and was not involved in Wickert's contract with Klug. Klug, on the other hand, testified that he had business dealings with Bovay, and Bovay appeared to handle the business's finances. In reviewing this case, we presume the trial court resolved this dispute in favor of its judgment and found that Bovay was not part of the business. *See Am. Type Culture Collection*, 83 S.W.3d at 806. Further, as will be discussed below, even if Bovay was involved in the business, Wickert's contacts with Texas do not give rise to either specific or general jurisdiction and therefore neither would Bovay's more limited contacts.

We turn to examine the allegations Klug maintains were not negated that relate to specific jurisdiction over Wickert. First, Klug contends Wickert failed to negate the allegation that he contracted with a Texas resident and at least partial performance of the contract was to be made here. Wickert admitted he had an oral contract with Klug. Merely contracting with a

–8–

Texas resident does not satisfy the minimum contacts requirement. *Internet Advert. Grp.*, 301 S.W.3d at 389 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). To evaluate purposeful availment, we look to such factors as prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether the defendant purposefully established minimum contacts with the forum. *Id.*

Here, there is another factual dispute about whether Wickert reached into Texas to solicit Klug's business. Klug testified that Wickert initiated discussions with him in August 2007 about purchasing his theater cards. Wickert's affidavit, however, stated that Klug contacted him by email in September 2007 to solicit his purchase of the collection. In the email, Klug informed Wickert he is letting go of his poster collection and will give "you two first pick." The email does not refer to any prior discussions about the subject. Wickert maintained that, prior to that email, he had no business dealings with Klug for at least five years. In reaching its decision to grant the special appearance, we presume the trial court resolved this factual dispute in favor of Wickert. Klug notes that Wickert was to pay him in Texas for the posters and did make a payment to him in Texas. But contracting with a Texas resident and requiring payments in Texas do not alone necessarily establish sufficient minimum contacts to demonstrate specific jurisdiction. *Id.* An agreement to make payments in the forum state does not weigh heavily in the "calculus of contacts." *Id.* Wickert's transmittal of a payment to Klug in Texas is not significant for determining whether he purposefully availed himself of the benefits of Texas law. *See id.*

Klug's other arguments about the court's specific jurisdiction involve his tort claims. He contends Wickert failed to negate the jurisdictional allegations that he committed a tort in Texas and committed an act outside of Texas with foreseeable consequences in Texas. Klug alleged that Wickert made false representations in numerous telephone calls and emails directed to him

in Texas. Although Wickert stated in his affidavit that he did not commit a tort in Texas, Klug contends this statement is conclusory.

Although allegations that a tort was committed in Texas satisfy our long-arm statute, such allegations do not necessarily satisfy the United States Constitution. *Moncrief Oil*, 414 S.W.3d at 149; *Michiana Easy Livin' Country v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005). The Texas Supreme Court has observed that several problems arise if jurisdiction turns not on a defendant's contacts, but on where he directed a tort. *Michiana*, 168 S.W.3d at 790. First, it shifts a court's focus from the relationship among the *defendant*, the forum, and the litigation, to the relationship among the *plaintiff*, the forum, and the litigation. *Id.* Second, if purposeful availment depends on whether a tort was directed toward Texas, then a nonresident may defeat jurisdiction by proving there was no tort. *Id.* "Business contacts are generally a matter of physical fact, while tort liability (especially in misrepresentation cases) turns on what the parties thought, said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in the latter." *Id.* at 791. Also, if directing a tort at Texas is enough, personal jurisdiction arises when a plaintiff alleges a tort, but not when he alleges breach of contract. *Id.* Such an analysis would again improperly focus on the plaintiff's actions rather than the defendant's purposeful availment.

If we focus on Wickert's activities conducted with Texas, the alleged contacts do not demonstrate purposeful availment. Giving deference to the trial court's resolution of the factual discrepancies, Wickert contracted with Klug, a Texas resident, after Klug contacted him in Vermont. At no time did Wickert travel to Texas. Klug shipped his posters to Wickert in Vermont. Although payment was to be made to Klug in Texas, this alone does not establish sufficient minimum contacts. There was not a substantial connection between Wickert's

–10–

contacts and the operative facts of the case—those that will be the focus of trial to prove Wickert's liability. *See Moncrief Oil*, 414 S.W.3d at 156; *Moki Mac*, 221 S.W.3d at 585.

We next turn to general jurisdiction. A general jurisdiction inquiry is very different from a specific jurisdiction inquiry and involves a more demanding minimum-contacts analysis. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007). Usually, the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services, or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction. *Id.* Recently, the United States Supreme Court clarified that for general jurisdiction the defendant's contacts must be so constant and pervasive "as to render [the nonresident defendant] essentially at home in the forum State." *Daimler AG*, 134 S. Ct. 746, 749, 751 (internal quotation marks omitted). Klug alleged Wickert operated a commercial interactive website directed at Texas and conducted extensive business in Texas, selling to Texas residents. He contends Wickert failed to negate these jurisdictional allegations.

Before *Daimler AG*, courts analyzed websites using three categories: (1) fully interactive websites clearly used for transacting business over the internet; (2) informative websites allowing the exchange of information between a potential customer and a host computer; and (3) passive websites used only for advertising over the internet. *Exchequer Fin. Grp., Inc. v. Stratum Dev., Inc.*, 239 S.W.3d 899, 909 (Tex. App.—Dallas 2007, no pet.) (citing *Reiff v. Roy*, 115 S.W.3d 700, 705–06 (Tex. App.—Dallas 2003, pet. denied)). Klug alleged the website in this case was a fully interactive website though which anyone anywhere could purchase theater-related items. Jurisdiction in cases involving interactive websites is determined by the degree of interaction. *Karstetter v. Voss*, 184 S.W.3d 396, 404 (Tex. App.—Dallas 2006, no pet.). Even if a website is highly interactive, that fact is but one factor to consider in determining whether

general jurisdiction exists. *My Vacation Europe, Inc. v. Sigel*, No. 05-14-00435-CV, 2015 WL 316319, at \*5 (Tex. App.—Dallas Jan. 26, 2015, no pet.) (mem. op.). A defendant's business activities in the forum state must be numerous to support a finding that it had the type of continuous and systematic contacts to allow the exercise of general jurisdiction. *See id.* (website available to anyone with internet access through which potential renter could inquire about vacation rental homes, complete reservation form, and submit payment alone was insufficient to confer general jurisdiction).

Nothing in the record shows Wickert or Applause made any particular effort to target or attract Texas customers. *See Daimler AG*, 134 S. Ct. 746, 749, 751; *Exchequer Fin. Grp.*, 239 S.W.3d at 909. There was nothing to suggest Wickert or Applause advertised in Texas or otherwise solicited customers for the website in Texas. Applause had no offices, employees, or registered agent in Texas. Any contacts with Texas through the website were random, isolated, and fortuitous. *See Karstetter*, 184 S.W.3d at 405 (defendants who listed vehicle for sale on eBay were not subject to jurisdiction in Texas). Wickert testified in his affidavit that he could not identify any Texas customers who had purchased from his website in the previous five years. This is at odds with Klug's testimony that he ordered a poster through the Applause website in 2006. As with the other factual inconsistencies, we presume the trial court resolved this dispute in favor of its judgment. Further, an isolated purchase and shipment of a poster to Texas does not show the kind of pervasive contacts necessary to establish general jurisdiction. Wickert's contacts with Texas do not rise to the level of being so constant and pervasive as to essentially render Texas his home jurisdiction which is necessary to support general jurisdiction in Texas. *See Daimler AG*, 134 S. Ct. 746, 749, 751; *Exchequer Fin. Grp.*, 239 S.W.3d at 909–10 (software company's contacts with Texas did not give rise to general jurisdiction where it served

small number of Texas customers, provided services from Illinois, and made no effort to seek out Texas customers).

Because appellees' contacts with Texas are insufficient to establish specific or general jurisdiction, we overrule Klug's issue. We affirm the trial court's dismissal order.

/Ada Brown/

ADA BROWN
JUSTICE

140080F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

WILLIAM KLUG, Appellant

No. 05-14-00080-CV  V.

J.P. WICKERT AND KARL BOVAY,
D/B/A APPLAUSE ENTERTAINMENT,
Appellees

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-08158-M.
Opinion delivered by Justice Brown. Justices
Evans and Whitehill participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's November 25, 2013 order dismissing the case for want of personal jurisdiction.

It is **ORDERED** that appellees J.P. WICKERT AND KARL BOVAY, D/B/A APPLAUSE ENTERTAINMENT recover their costs of this appeal from appellant WILLIAM KLUG.

Judgment entered this 16th day of July, 2015.