

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

---

No. 08-25-00127-CV

---

Marcus Asmar, Appellant

v.

Carlos Valadez, Appellee

On Appeal from the 131st District Court[1]
Bexar County, Texas
Trial Court No. 2024CI04461

## MEMORANDUM OPINION

Appellant, Marcus Asmar, brings this interlocutory appeal from the trial court's denial of

his special appearance in a lawsuit filed against him by Appellee, Carlos Valadez. Because we

---

[1] The Honorable John Specia is the presiding judge of the 131st Judicial District Court. The Honorable Nadine M. Nieto, presiding judge of the 285th Judicial District Court, signed the order denying Appellant's special appearance.

conclude the trial court has personal jurisdiction over Asmar as to the claims brought by Valadez, we affirm the trial court's order.

## I. BACKGROUND

On July 25, 2023, Asmar, a resident of California, entered into a vehicle consignment and sales agreement with Alphamotive Motors, LLC, providing for the sale of a Ford Mustang Fastback. The agreement noted the vehicle had been driven 2,047 miles and it was valued at $249,000. The contract terms provided that Alphamotive would sell the vehicle for a 5% consignment fee but it set no minimum or specific price.

On October 1, 2023, Valadez signed a Buyer's Order to purchase the vehicle for a sales price of $185,000. Valadez is a resident of Texas, living in San Antonio. The Buyer's Order listed Alphamotive as the seller and Valadez as the buyer, and it was signed by Byron Castro, an Alphamotive salesperson. Valadez alleged he paid the $185,000 purchase price on October 5, and Alphamotive delivered possession of the vehicle to him in Texas on October 10.

On October 26, 2023, Asmar called Alphamotive inquiring on the whereabouts of the subject vehicle and alleged that Castro told him:

> I got involved in something bad, and some deals went south and I owed some people some money and I used the money from your car to pay off that debt. I undersold your car for $185,000 but I promise I am going to get you your money, I was just buying time to make things right and fix the situation.

Asmar then contacted the local police department in California and the San Antonio Police Department to report what happened. Asmar reported the vehicle stolen and told the police the location of the vehicle.[2] Asmar recovered the vehicle on February 27, 2024, "with prior

---

[2] Asmar was able to log into a tracking portal where he could track the last location of the vehicle.

coordination with California and Texas law enforcement and a private investigator who hired a repossession company.

On February 28, 2024, Carlos Valadez filed suit against Asmar, and other defendants: Alphamotive, Jean Castro, Bryon Castro, and Jesse Hames Palmer d/b/a Auto Recovery Towing Service.[3] Valadez asserted claims for breach of contract, deceptive trade practices, conversion, negligence, and invasion of privacy. After Valadez filed suit, Valadez filed an application for a temporary restraining order (TRO) alleging Asmar, through his agent Palmer d/b/a Auto Recovery Towing Service, wrongfully towed the vehicle and contracted to ship the vehicle out of Texas to California. Valadez asserted that, unless defendants were immediately enjoined or restrained, Asmar would likely conceal or sell the vehicle.

The same day, the trial court held a Zoom hearing on the TRO application where Valadez appeared through counsel and Asmar attended pro se. Following the hearing, the trial court signed a TRO where it ordered Asmar to immediately cease and desist from: (1) transferring or selling, or causing or allowing the vehicle to be sold or transferred; (2) encumbering, hiding, concealing, damaging, borrowing, or pleading against (or allowing any of the foregoing) the vehicle from the date of entry of this order until fourteen (14) days thereafter, or until further order of this Court.

On March 13, 2024, Asmar, represented by counsel, filed a special appearance asserting Asmar was not a resident of Texas, did not have minimum contacts with Texas, and the trial court's exercise of jurisdiction over Asmar would offend traditional notions of fair play and substantial justice. Valadez filed a motion to strike Asmar's special appearance asserting Asmar had made a general appearance at the TRO hearing. Valadez amended his petition alleging that Alphamotive acted as agent of Asmar pursuant to a Consignment Agreement in executing a sales contract with

_____

[3] Only Asmar is a party to this appeal.

Valadez, a Texas resident. Valadez also alleged Asmar availed himself of the protection of the laws of Texas by contacting law enforcement and falsely reporting the vehicle stolen. Specifically, Valadez alleged Asmar hired private investigators to follow and harass Valadez in Texas and hired a towing service that does business in Texas to take possession of the vehicle in Texas.

After conducting a non-evidentiary hearing, the trial court denied Asmar's special appearance without specifying the grounds for its decision. The trial court's order did not specify the basis on which it relied in denying the special appearance.

## II. STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law reviewed de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). However, in ruling on a special appearance, the trial court must sometimes resolve questions of fact. *Id.* "When, as here, the trial court does not issue findings of fact and conclusions of law with its judgment, we presume all factual disputes were resolved in favor of the trial court's decision unless they are challenged on appeal." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7–8 (Tex. 2021). Similarly, "we imply all relevant facts necessary to support the judgment that are supported by evidence." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). However, when the appellate record includes the reporter's and clerk's records, implied findings are not conclusive and may be challenged for legal and factual sufficiency on appeal. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

The plaintiff bears the initial burden of pleading facts to bring the defendant within the reach of the long-arm statute. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010). If the plaintiff meets its initial burden, "[t]he burden then shifts to the defendant to negate all bases of jurisdiction in the allegations." *Luciano*, 625 S.W.3d at 8. A defendant can

4

negate jurisdiction by showing the plaintiff's alleged jurisdictional facts, even if true, do not meet the personal jurisdiction requirements. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 n.4 (Tex. 2016). Alternatively, a defendant can present evidence that negates one or more of the requirements, controverting the plaintiff's contrary allegations. *Id.* Should the parties present conflicting evidence that raises a fact issue, we resolve the dispute by deferring to the trial court's determination. *Id.*

### III. APPLICABLE LAW

Texas courts may exercise personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal due-process guarantees. *Id.* at 36 (citing *Moncrief Oil Int'l*, 414 S.W.3d at 149). Under the long-arm statute, a nonresident is present in Texas for purposes of personal jurisdiction when the nonresident is doing business in the state. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042; *Kerlin v. Sauceda*, 263 S.W.3d 920, 927 (Tex. 2008). Doing business in this state includes certain acts by a nonresident such as: "(1) contract[ing] by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state" and "(2) commit[ting] a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1), (2).

The long-arm statute extends a Texas court's personal jurisdiction only as far as the federal constitutional requirement of due process will permit. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). A plaintiff's allegations must also satisfy federal due-process requirements. *Id.* To satisfy these requirements, personal jurisdiction may be exercised over a nonresident defendant only if two requirements are met: (1) the defendant has "minimum contacts" with the forum state, and (2) the exercise of jurisdiction will not offend "traditional notions of fair play and substantial justice." *See Luciano*, 625 S.W.3d at 8; *Moki Mac*, 221 S.W.3d at 575. A

5

nonresident establishes minimum contacts when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Moki Mac*, 221 S.W.3d at 575. That is, the in-state activities support "a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Old Republic*, 549 S.W.3d at 559 (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). Three important considerations guide a review of a nonresident's contacts with the state: (1) "only the defendants' contacts with the forum are relevant, not the unilateral activity of another party or a third person"; (2) "the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated;" and (3) "the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction." *Id.* (quoting *Moncrief Oil*, 414 S.W.3d at 151). This inquiry focuses on the defendant's efforts to avail itself of the forum, not on the form of the action chosen by the plaintiff. *Moki Mac*, 221 S.W.3d at 576.

If established, minimum contacts with the forum state may give rise to either general or specific jurisdiction. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010). A court has general jurisdiction over a nonresident defendant whose "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *TV Azteca*, 490 S.W.3d at 37 (alteration in original) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). By contrast, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021). The minimum contacts necessary for specific jurisdiction are established if the defendant purposefully avails itself of the privilege of conducting activities in the forum state and the suit arises out of or relates to the defendant's contacts with the forum. *Moki Mac*, 221 S.W.3d

6

at 575–76. More particularly, however, the defendant's forum contacts must be substantially connected to the operative facts of the litigation. *Id.* at 585.

The second prong of the jurisdictional analysis requires us to determine whether "the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *BMC Software Belg.*, 83 S.W.3d at 795. Once a court finds that a defendant has had minimum contacts with Texas and purposely availed itself of the benefits and protections of Texas, it is "[o]nly in rare cases" that jurisdiction is negated on fair play and substantial justice grounds. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991). It is the defendant's burden to show why the exercise of jurisdiction would be unfair and unjust:

> [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the 'fundamental substantive social policies' of another State may be accommodated through application of the forum's choice-of-law rules. Similarly, a defendant claiming substantial inconvenience may seek a change of venue.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

## IV. WAIVER BY GENERAL APPEARANCE

Valadez argued at trial, as he does in this Court, that Asmar entered a general appearance when he appeared at the TRO hearing prior to his filing of a special appearance. Valadez urges that because Asmar appeared at the hearing, agreed to accept service, agreed to the terms of the trial court's TRO, and testified during the hearing, he waived any challenges to personal jurisdiction in Texas. In response, Asmar contends his participation in the hearing was not substantial enough to amount to a general appearance.

### A. Applicable law

A special appearance allows a nonresident defendant to challenge a court's personal jurisdiction over the defendant without becoming subject to the jurisdiction of Texas courts. *See* Tex. R. Civ. P. 120a; *Kawasaki Stell Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex. 1985) (per curiam). Nonetheless, if a defendant earlier entered a general appearance, the defendant may be subject to personal jurisdiction in a Texas court. *Boyd v. Kobierowski*, 283 S.W.3d 19, 21 (Tex. App.—San Antonio 2009, no pet.); *see also* Tex. R. Civ. P. 120. "A general appearance entered before a special appearance waives the special appearance." *Boyd*, 283 S.W.3d at 21 (citing *Exito Elecs. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 304–05 (Tex. 2004) (per curiam)). "A party waives a special appearance and enters a general appearance: (1) when it invokes the judgment of the court on any question other than the court's jurisdiction, (2) when it recognizes by its own acts that an action is properly pending, or (3) when it seeks affirmative action from the court." *CIBanco, S.A., Institucion de Banca Multiple v. Quezada*, 656 S.W.3d 749, 756 (Tex. App.—El Paso 2022, no pet.). In this regard, affirmative action could include objecting to substantive issues, examining witnesses, moving for summary judgment, or filing a motion for new trial. *See Stickland v. Schlegel*, No. 02-22-00281-CV, 2023 WL 8112889, at *10 (Tex. App.—Fort Worth Nov. 22, 2023, pet. denied) (mem. op.) (collecting cases); *see also Kaufman v. AmeriHealth Lab., LLC*, No. 05-20-00504-CV, 2020 WL 6375336, at *5 (Tex. App.—Dallas Oct. 30, 2020, no pet.) (mem. op.) (holding defendant's conduct during the beginning of a TRO hearing, considered in context of the present record, amounted to a general appearance); *Schoendienst v. Haug*, 399 S.W.3d 313, 321–22 (Tex. App.—Austin 2013, no pet.) (holding that defendant entered a general appearance through conduct in agreeing to the temporary injunction at issue but notes the analysis is dependent upon particular facts because there can be circumstances where a defendant's agreement to a temporary

injunction will not constituted the sort of recognition of the court's jurisdiction that amounts to an appearance); *Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 803 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding defendant waived his special appearance by seeking affirmative relief from the court through a motion to dismiss and motion for summary judgment, all before the trial court heard and determined his special appearance).

Neither a party's mere presence in court nor a party's appearance solely as a witness constitutes a general appearance. *Id.* Likewise, participating in matters ancillary or preliminary to the main suit does not amount to a general appearance. Illustrating this point, a defendant's actions in agreeing to a Rule 11 agreement or collateral order, filing a writ of mandamus or motion for emergency relief, and agreeing to the extension of a temporary restraining order or temporary injunction will not constitute a general appearance. *See Grynberg v. M-I L.L.C.*, 398 S.W.3d 864, 878 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied) (collecting cases). In short, whether a defendant has waived his challenge to personal jurisdiction will depend on the circumstances and what is shown by the record of the case. *Schoendienst*, 399 S.W.3d at 321–22.

### B. Analysis

Asmar appeared at the TRO hearing, which occurred on the day after Valadez filed his lawsuit and the same day he filed his application for TRO. At the hearing, conducted virtually over the internet, Asmar stated he was "only notified of this this morning" and that he had not been served. Valadez argued that the TRO hearing could proceed because he was only asking for the vehicle "to be impounded for safekeeping so that it [did] not disappear." Asmar informed the trial court he would not accept service and clarified that he was a California resident. He asserted that he was a victim of criminal actions and stated, "this is transpiring into something that I never thought would take place so here I am."

9

After swearing Asmar in with an oath, the trial court asked him whether he had received a copy of the petition. Asmar responded by stating that the petition was emailed to his California attorney, who did not represent him in this matter because he was not licensed in Texas. Asmar made it clear that he did not have a copy of the petition but his California attorney "went over a few line items" with him through verbal communications only. The trial court also asked Asmar whether he received money from Valadez, to which Asmar stated he did not. Asmar claimed that both he and Valadez had been victimized; and he was pursuing felony charges against the individuals he entrusted with his vehicle. Asmar also testified that the vehicle was currently being transported to California, and it was likely in Arizona at the time of the hearing. The trial court then announced it planned to do the "minimal thing" and enjoin Asmar from selling the car. It continued that it would not order the vehicle to be returned to Texas as it would be unduly burdensome and not within its jurisdiction. Asmar stated he understood. Asmar told the trial court it could send a copy of the order to his home address to which the trial court asked whether he would be accepting service in the case. Asmar stated he would and the following ensued:

> THE COURT: Will you accept E-service on this matter?
>
> ASMAR: No, I--did not give consent for that.
>
> THE COURT: Okay. You just consented to accept service. Are you going to accept service?
>
> ASMAR: Yes, I will.
>
> .      .      .
>
> THE COURT: By what means? What are your options?
>
> [VALADEZ'S COUNSEL]: Process server.
>
> THE COURT: Okay. He's going to send a private process server to serve you. You need to accept it. You can't just dodge service. Okay?
>
> ASMAR: Yes. Absolutely. Yes, sir.

As relevant here, the Texas Supreme Court recently considered a question of procedural waiver where a pro se defendant had not filed a written special appearance but attended a Zoom hearing on a protective order. *Goldstein v. Sabatino*, 690 S.W.3d 287, 295 (Tex. 2024). There, after the filing of an application for a protective order, the trial court sent notice to the parties of a setting for a hearing and required them to file sworn motions on their appearances before the hearing. *See id.* (citing Tex. R. Civ. P. 120a(1) ("[A] special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion.")). Although the defendant did not do so, he did not file any other pleading or motion asking for relief or otherwise indicating that the action was properly pending before the trial court. *Id.* The Supreme Court noted it has declined to hold "that merely appearing as a witness in a cause serves as a general appearance, subjecting one to the jurisdiction of the court." *Id.* (quoting *Werner v. Colwell*, 909 S.W.2d 866, 870 (Tex. 1995)). Additionally, it found the defendant had raised the issue of personal jurisdiction at the hearing when he stated: "the long arm statute from Texas does not apply in this case." *Id.* From this record, the Supreme Court held that the defendant challenged personal jurisdiction at his first opportunity to offer any sworn testimony and, interpreting his actions liberally and with patience, the Court did not view his appearance at the hearing as a general appearance. *Id.* at 295–96.

While Asmar relies on *Goldstien*, Valadez argues it is distinguishable. He points out that Asmar did not make the same type of statement regarding personal jurisdiction at the TRO hearing held in the case. Valadez asserts Asmar instead agreed to accept service, and he acted inconsistent with objecting to the trial court's exercise of personal jurisdiction. But we disagree with that characterization. Because Asmar declared that he was not waiving the need to be served with citation, while promising he would not evade service, did not constitute a general appearance. *See*

11

*Zanchi v. Lane*, 408 S.W.3d 373, 378 (Tex. 2013) (holding that a defendant could subject himself individually to the trial court's judgments by accepting or waving service in his individual capacity).

Valadez further asserts that Asmar's actions in "offering testimony, making legal arguments, obtaining modification of [Valadez's] requested injunctive relief, and affirmatively agreeing to abide by the terms of the injunctive relief," constituted a general appearance. Indeed, actively arguing about the merits of an underlying suit at a TRO hearing may constitute a general appearance. *See Kaufman v. AmeriHealth Lab., LLC*, No. 05-20-00504-CV, 2020 WL 6375336, at *1–2, *4–5 (Tex. App.—Dallas Oct. 30, 2020, no pet.) (mem. op.) (holding attorney's appearance at TRO hearing, where counsel actively argued on the underlying merits of the contract dispute, worked out a Rule 11 agreement on discovery, agreed to an extension of the TRO, and made a discovery request on the record, constituted a general appearance). But the record here is contrary. In this case, although Asmar gave testimony under oath, he did not seek affirmative relief inconsistent with his contention that the trial court lacked personal jurisdiction over him. *See Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 9 (Tex. App.—San Antonio 2004, pet. denied) (finding defendant's arguments against finding a default judgment against him was not a general appearance when he did not concede the trial court had jurisdiction to make a finding); *see also Dawson–Austin v. Austin*, 968 S.W.2d 319, 323 (Tex. 1998) (rejecting an argument that a motion for continuance resulted in a general appearance because "the motion for continuance did not request affirmative relief inconsistent with [defendant's] assertion that the district court lacked jurisdiction," but rather "asked the court to defer action on all matters"); *Exchequer Fin. Grp., Inc. v. Stratum, Dev., Inc.*, 239 S.W.3d 899, 905 (Tex. App.—Dallas 2007, no pet.) (holding there was no general appearance when "no evidence on our record showing appellee requested any

affirmative relief from the trial court"). For all these reasons, we agree that Asmar's actions during the TRO hearing were insufficient to constitute a general appearance.

We conclude Asmar did not waive his special appearance.

## V. CLAIMS SUPPORTING PERSONAL JURISDICTION

In his sole issue on appeal, Asmar argues that Texas courts lack specific jurisdiction over him because any contacts with Texas were too attenuated and insufficient to constitute purposeful availment.[4] Because each of Valadez's claims stem from allegations that he is the rightful owner of the vehicle subject of the suit, and Asmar took the vehicle back from Valadez's possession, we conclude the claims arise from the same alleged forum contacts. For this reason, we need not analyze Asmar's minimum contacts on a claim-by-claim basis. *See Moncrief Oil*, 414 S.W.3d at 150–51 ("[A] court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts."). Rather, to determine whether the trial court has personal jurisdiction over Asmar, we assess individually each of his alleged contacts with Texas. *TV Azteca*, 490 S.W.3d at 52.

### A. Minimum contacts

Valadez contends that Asmar purposefully availed himself of Texas in two ways: (1) by employing Alphamotive as his agent, who then sought to sell the vehicle in Texas, and (2) by taking actions in Texas to retrieve the vehicle after it was transported to Texas.

First, looking at the claims that Alphamotive's contacts with Texas can be imputed to Asmar under an agency relationship, Asmar contends that Valadez failed to meet his burden to

---

[4] Valadez did not allege, and the record does not support, that Asmar is subject to general jurisdiction in Texas. *See EMO Trans, Inc. v. Inmobiliaria Axial, S.A. de C.V.*, 657 S.W.3d 772, 782 (Tex. App.—El Paso 2022, pet. denied) ("General or all-purpose jurisdiction describes a defendant with contacts so 'continuous and systematic as to render [it] essentially at home in the forum State.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))). Therefore, we only address the existence of specific jurisdiction.

prove Alphamotive acted as Asmar's agent. Moreover, Asmar asserts that even assuming that Alphamotive's in-state contacts could be imputed to Asmar, he argues those contacts were insufficient to support the exercise of personal jurisdiction. Based on the parties' framing of the issue, we find it dispositive to review Alphamotive's contacts with Texas. If the agent's contacts are insufficient to constitute purposeful availment in the state, it logically follows that a lack of contacts imputes to the agent's principal.

Recently, we observed that "[t]he United States Supreme Court has provided that to determine whether a nonresident defendant purposefully establishes minimum contacts within the forum through a 'contract,' we must evaluate the factors of 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[.]'" *EMO Trans, Inc. v. Inmobiliaria Axial, S.A. de C.V.*, 657 S.W.3d 772, 786 (Tex. App.—El Paso 2022, pet. denied) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985)). It is insufficient to establish purposeful availment that a nonresident defendant contracted with a Texas company when there is no allegation of acts constituting a breach of the contract in Texas or allegations that the contract required the nonresident defendant to conduct activities in Texas. *Info. Servs. Group, Inc. v. Rawlinson*, 302 S.W.3d 392, 400 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

Asmar argues that the Texas Supreme Court's decision in *Michiana* is analogous and instructive to this case. In *Michiana*, plaintiff was a Texas resident who purchased a recreational vehicle from an Indiana dealer that "only did business in Indiana." *Michiana*, 168 S.W.3d at 781. The plaintiff called the dealer in Indiana to negotiate the deal, sent payments to Indiana, paid for delivery from Indiana, and agreed to resolve every dispute in Indiana. *Id.* The plaintiff filed suit in Texas asserting claims for breach of contract, breach of warranty, fraud, and DTPA violations based

on misrepresentations the dealer allegedly made during a phone call. *Id.* at 784. The Texas Supreme Court held the evidence did not establish that the dealer had purposefully availed itself of the privilege of conducting activities in Texas. *Id.* at 785. Specifically, the Court held that the sale of the vehicle at issue, which was constructed and equipped outside of Texas, was initiated by plaintiff, paid for outside of Texas, and shipped to Texas at the plaintiff's request and expense. *Id.* at 784.

Here, there is no dispute that Alphamotive is a California limited liability company doing business in California. In Asmar's affidavit in support of his special appearance, he testified that he did not direct Alphamotive to sell his vehicle to a Texas buyer, or any other specific buyer. He concedes that he entered no agreement for Alphamotive to sell to a specific geographic area but he notes that his vehicle was listed for marketing to a high-net-worth area of California. Asmar explained that the consignment agreement was a "California DMV-promulgated contract to sell the vehicle through a consignment company based and licensed in California." Responding, Valadez asserts the facts of this case are distinguishable from *Michiana* because Alphamotive used an internet site that "apparently reach Valadez in Texas," contracted with Valadez, and delivered the vehicle to Valadez in Texas.

The record contains no evidence showing that Alphamotive initiated contact with Valadez to sell the vehicle. Indeed, the fact that a Texas resident happened to view and respond to Alphamotive's marketing of efforts is no more than a "random, fortuitous, or attenuated" contact with Texas that is insufficient to support a finding of purposeful availment. *See Retamco*, 278 S.W.3d at 339; *Moki Mac*, 221 S.W.3d at 575. Additionally, there is no evidence regarding the website and whether or not it was interactive. *See Moulton v. Shane*, No. 04-18-00338-CV, 2018 WL 6517395, at *5 (Tex. App.—San Antonio Dec. 12, 2018, no pet.) (mem. op.) (holding the

15

sliding-scale analysis—used in cases where defendant used the internet—does not apply in circumstances where contact information is initially provided through the website as an intermediary, and the parties then communicate directly with one another). We also find that Alphamotive's delivery of the vehicle to Texas was insufficient to constitute a purposeful availment as the delivery to Texas resulted from the mere fortuity that Valadez happened to reside in Texas. *See Moki Mac*, 221 S.W.3d at 577 (holding while "a single contact can support jurisdiction if that contact creates a 'substantial connection' with the forum, jurisdiction cannot be established where the contact creates only an 'attenuated' affiliation with the forum"); *see also Munz v. Schreiber*, No. 14-17-00687-CV, 2019 WL 1768590, at *7 (Tex. App.—Houston [14th Dist.] Apr. 23, 2019, no pet.) (mem. op.) ("When Texas is the destination of delivery due to the plaintiff's unilateral choice, such contact is merely fortuitous and will not support jurisdiction."); *Moulton*, 2018 WL 6517395, at *6 (holding tee shirt delivery contact, at best, creates "only an 'attenuated' affiliation" with Texas).

We determine the record does not demonstrate Alphamotive had sufficient minimum contacts with Texas or that it engaged in a level of activity that would justify our concluding that it could reasonably anticipate being called into a Texas court. *See Retamco*, 278 S.W.3d at 338. Assuming Alphamotive's contacts could be imputed onto Asmar through an agency relationship, because the record does not demonstrate Alphamotive has sufficient contacts with Texas, Asmar neither had sufficient contacts with the state through those contacts.

Second, Valadez asserts Asmar had sufficient minimum contacts with Texas through his actions of contacting the San Antonio police department, hiring private investigators, and hiring a towing company to take possession of the vehicle.[5] In his affidavit, Asmar attested that he

---

[5] Asmar additionally contends that Texas cannot exercise personal jurisdiction over him as to the claims for theft and conversion because the evidence "conclusively establishes . . . Valadez was not the owner of the vehicle, and he had

16

contacted the San Antonio Police Department and filed an incident report. He provided the address where the vehicle last "pinged." Asmar also hired a private investigator, who in turn hired a company that repossessed vehicles. Asmar attested that he recovered the vehicle through coordination with the police, the private investigator he hired, and the work of the company that recovered the vehicle.

Under Texas case law, hiring a third party to repossess a vehicle in Texas is a purposeful contact that ordinarily gives rise to specific personal jurisdiction. *See Arterbury v. Am. Bank & Trust Co.*, 553 S.W.2d 943, 948 (Tex. App.—Texarkana 1977, no writ). In *Arterbury*, the plaintiff sued a Louisiana bank in Texas for wrongful repossession of a car in Texas. *Id.* at 945. The parties did not dispute that the Louisiana bank hired a Texas bank to repossess the car and that an employee of the Texas bank repossessed the car from the plaintiff's home. *Id.* at 945–46. The appellate court reversed the trial court's decision and held specific personal jurisdiction existed over the Louisiana bank because it had purposefully taken "possession of the automobile in Texas through its agent employed for that purpose." *Id.* at 948–49. The court further concluded that a Texas court's exercise of jurisdiction over the Louisiana bank would comport with traditional notions of fair play and substantial justice because the purposeful act of repossession in Texas advanced the bank's own interests and the bank enjoyed the benefit and protection of Texas laws. *Id.* (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945)). The court rejected the Louisiana bank's argument that Louisiana courts would be better suited to determine the parties' rights under the car note and security instrument, because the cause of action at issue was for an alleged tort in effecting a repossession in Texas. *Id.*

---

no right to the immediate possession of the vehicle." "We do not resolve merits-based questions in reviewing a special appearance." *Michelin N. Am., Inc. v. De Santiago*, 584 S.W.3d 114, 134 (Tex. App.—El Paso 2018). This argument has no bearing on our determination of whether the trial court can exercise personal jurisdiction over Asmar. *Id.*

Later, the Thirteenth Court of Appeals, citing the reasoning in *Arterbury*, held that specific personal jurisdiction existed in Texas over two Wyoming mobile-home manufacturers that repossessed three mobile homes in Texas. *Teton Int'l v. First Nat'l Bank of Mission*, 718 S.W.2d 838, 840 (Tex. App.—Corpus Christi 1986, no pet.). In *Teton*, the nonresident manufacturers sold mobile homes to a dealer located in Texas, and after the nonresident manufacturers repossessed the mobile homes in Texas, the bank that loaned the dealer money to buy the mobile homes sued them in Texas alleging conversion of its collateral. *Id.* at 839. The Thirteenth Court concluded that due process was not offended by requiring the nonresident manufacturers to defend suit in Texas. *Id.* at 840.

Here, Asmar concedes that he hired a private investigator, who in turn hired the repossession company to take possession of the vehicle from Valadez. Although the title to the vehicle is disputed by the parties, it is not disputed that Asmar engaged in actions to retrieve the vehicle from Valadez's possession. In doing so, he purposefully made contact in Texas to coordinate with Texas law enforcement and Texas companies to retrieve the vehicle. *See Smithson v. Cid*, No. 13-10-00062-CV, 2011 WL 4562469, at *8 (Tex. App.—Corpus Christi–Edinburg Sept. 29, 2011, no pet.) (mem. op.) (applying the holding in *Arterbury* and finding nonresident defendants' acts of maintaining possession of a vehicle in Texas by failure to release an invalid lien was sufficient minimum contacts for the trial court to exercise personal jurisdiction). Here, the operative facts of Valadez's lawsuit would concern the rightful ownership of the vehicle and whether Asmar acted wrongfully in repossessing it in the manner that he did. Unlike the randomness of the marketing effort, we conclude the contacts made to recover the vehicle from Valadez in Texas are substantially related to the operative facts of the litigation and constitutes

sufficient minimum contacts with Texas to support the exercise of specific personal jurisdiction over him in a Texas court. *Moki Mac*, 221 S.W.3d at 588.

## B. Traditional notions of fair play and substantial justice

When determining whether the exercise of personal jurisdiction over Asmar comports with "traditional notions of fair play and substantial justice," the burden is on the defendant to present a compelling case that the presence of some other considerations renders the exercise of jurisdiction unreasonable. *See Guardian Royal*, 815 S.W.2d at 228, 231 (citing *Burger King*, 471 U.S. at 477). In making this determination, a court must generally look to the following factors: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 231. Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when a nonresident defendant has purposefully established minimum contacts with the forum state. *Id.*

Asmar asserts that he has only been to Texas three times in total and those times were not recent. He further asserts that, because the case involves a vehicle that was primarily owned and sold in California, and most defendants are domiciled in that state, the interests of Texas in adjudicating the dispute is diminished. We disagree. It can be reasonably argued that Valadez's claims all concern a vehicle being taken from the possession and control of a Texas resident, while the vehicle remained in state, and under contract with a Texas resident. The fact that it would be burdensome to Asmar to litigate the case in Texas does not offend traditional notions of fair play and substantial justice because courts recognize that someone is always inconvenienced in multi-

state disputes. *See TexVa, Inc. v. Boone*, 300 S.W.3d 879, 891 (Tex. App.—Dallas 2009, pet. denied). On this record, Asmar has failed to present a compelling case that Texas lacks an interest in preventing theft and wrongful repossession. He has not demonstrated any other factors disfavoring the finding of personal jurisdiction over him.

For this reason, we conclude the trial court has specific jurisdiction over Asmar. We overrule Asmar's sole issue.

## VI. CONCLUSION

We affirm the order denying Asmar's special appearance.


GINA M. PALAFOX, Justice

March 31, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.